UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ATLANTA COMMUNITY SCHOOLS, et al.,

      Plaintiffs,

                                            Case Number 11-14361
v.                                    Honorable Thomas L. Ludington

ALPENA-MONTMORENCY-ALCONA
EDUCATIONAL SERVICE DISTRICT,

      Defendants.
_____/

## ORDER DIRECTING SUPPLEMENTAL BRIEFING

On October 3, 2011, Plaintiffs filed a complaint alleging nine claims arising from a dispute between Plaintiff Atlanta Community Schools ("ACS") and Alpena-Montmorency-Alcona Educational Service District ("AMA ESD") related to the provision of special education and related services to eligible ACS students. The specific claims are outlined more fully below. In lieu of filing an answer, Defendant filed a motion to dismiss or for summary judgment, contending that Plaintiffs failed to exhaust their administrative remedies and that Plaintiffs ACS and Stauffer lack standing to assert claims under the Individuals with Disability Education Act (the "IDEA"), 20 U.S.C. § 1400, et seq.

The IDEA is a federal statute pursuant to which the United States provides funding to the states, subject to certain conditions, to provide special education and related services to eligible disabled students. Michigan meets the conditions for IDEA funding through Michigan's Mandatory Special Education Act ("MMSEA"), Mich. Comp. Laws § 380.1701, et seq., and Michigan's Revised Administrative Rules for Special Education ("MARSE") 340.1701, et seq. Among other things, the MMSEA and RARSE require Michigan's intermediate school districts ("ISDs") to

"cooperate" with their constituent districts to develop ISD Plans for the provision of special education and related services to eligible disabled students who attend the constituent districts served by the ISD. Mich. Comp. Laws § 380.1711(1)(a) and MARSE 340.1833. ISDs are obligated to provide the special education and related services described in the ISD Plans to eligible disabled students who attend school in the constituent districts. *Id.*

Plaintiff ACS is a constituent district of Defendant AMA ESD. The AMA ESD receives funding from federal, state and local sources to provide special education and related services to eligible ACS students and to eligible students in its other constituent districts. Compl. pars. 16-25. The services AMA ESD is required to provide, and the manner in which AMA ESD is required to provide those services, is described in the ISD Plan. ECF No. 13 Ex. 6. The AMA ESD consists of the five public school districts and schools located in the Michigan counties of Alpena, Montmorency and Alcona, including the ACS, Alcona Community Schools, Alpena Public Schools, Hillman Community Schools and Bingham Arts Academy. ECF No. 1 at 2, par. 15. The Authorization for the 2011-2012 school year was agreed upon by the local constituent school districts other than ACS that are identified in the ISD Plan.

ACS and ACS's Superintendent, Teresa Stauffer, allege that they advocated for ACS's disabled students and, in the process, have been critical of AMA ESD. In particular, ACS and Ms. Stauffer have been critical of the manner in which AMA ESD provides special education and related services to ACS's disabled students. Compl. par. 38. Plaintiffs allege that AMA ESD retaliated against ACS, Ms. Stauffer and ACS's disabled students by terminating the services it is required to provide pursuant to the ISD Plan. Compl. par. 39. Plaintiffs also contend that the pretext AMA ESD used to cover its retaliation was ACS's refusal to sign an "authorization" that AMA ESD had drafted

that they suggest unilaterally amended the ISD Plan.  Compl. par. 37. After ACS was unwilling to

sign the authorization and AMA ESD would not provide the services, ACS unsuccessfully attempted

to persuade AMA ESD to reinstate the services. When these efforts failed, Plaintiffs filed the instant

complaint consisting of nine counts: Count I alleging AMA ESD violated the IDEA by not providing

the programs and related services provided for in the ISD Plan; Count II alleging AMA ESD

violated the Americans with Disabilities Act of 1990 by treating disabled students from ACS

differently than disabled students in other constituent districts; Count III, alleging AMA ESD

violated Section 504 of the Rehabilitation Act of 1973 by treating disabled students from ACS

differently than disabled students in other constituent districts; Count IV alleging AMA ESD

violated the Equal Protection Clause of the federal constitution by treating disabled students from

ACS differently than disabled students in other constituent districts; Count V alleging AMA ESD

violated the Due Process clause of the federal constitution by terminating services to ACS's students

without due process; Count VI alleging AMA ESD violated Michigan's Mandatory Special

Education Act by failing to cooperate with ACS in revising the ISD Plan and by violating the ISD

Plan; Count VII alleging AMA ESD violated Michigan's Persons with Disabilities Civil Rights Act

by treating disabled ACS students differently than disabled students in other constituent districts;

Count VIII re-alleging Count IV under the Equal Protection Clause of Michigan's constitution; and,

Count IX re-alleging Count V under the Due Process Clause of Michigan's constitution.

Defendant now seeks dismissal of Plaintiffs' complaint pursuant to Federal Rule of Civil

Procedure 12(b)(1) or (6) or 56. In relevant part, Defendant contends that there is "no event" that

actually gives rise to Plaintiffs' pursuit of the claims raised in the complaint. AMA ESD argues that

it received correspondence from ACS Superintendent Teresa Stauffer that refused to renew the

IDEA. ECF No. 13 Ex. 4.

Prior to the termination of the agreement between ACS and AMA ESD, Plaintiff ACS had selected certain special education programs and services to be included in the agreement with the AMA ESD from a continuum of options identified in the ISD Plan. At the time of Plaintiff ACS' June 7, 2011 termination notice, AMA ESD had been providing special education services to ACS since 2002. ECF No. 13 Ex. 5. The development of the ISD Plan for the delivery of special education and related services to students enrolled within the ESD is prescribed by Mich. Comp. Laws § 380.1711(1)(a), as well as the MARSE 340.1831-1838.

In conjunction with the current 2002 ISD Plan, the local constituent districts seeking special education programs and services available from AMA ESD are required to execute the Authorization to Operate Special Education Programs and / or Services ("Authorization"). The ISD Plan contains the following language regarding the Authorization:

> An "Authorization to Operate Special Education Programs and/or Services" shall be signed annually by district superintendents. This agreement outlines responsibilities related to program operation, conducting IEP team meetings, and arranging and conducting due process hearings should they be requested. This agreement can be reviewed at the AMA ESD Office.

ECF No. 13 Ex. 5 at 4-5. Prior to June of 2011, ACS and Superintendent Stauffer executed the Authorization without objection. ECF No. 13 Ex. 6; Ex. 7; Ex. 8. Defendant asserts that the Authorization for the 2011-2012 school year was largely unchanged and agreed upon by the other local constituent school districts that are identified in the ISD Plan. ECF No. 13 Ex. 9 par. 7. However, ACS refused to execute the Authorization that they suggest is required by the 2002 ISD Plan. ECF No. 13 Ex. 10.

As stated above, ACS Superintendent Stauffer notified the AMA ESD of the district's

intention to end the Authorization. *See* Exhibit 4. The June 7, 2011 correspondence did not provide any rationale for the decision to terminate the long standing relationship. The AMA ESD respected the decision made by ACS to terminate the Authorization and is no longer providing special education services to the students who reside within the geographic region serviced by ACS, except for two (2) students whose Individualized Education Programs ("IEPs") identify the AMA ESD as the operating district. On July 29, 2011, AMA ESD Superintendent, Brian Wilmot, directed correspondence to the ACS Board of Education reminding them that in order for AMA to provide special education programs and services, the Authorization would need to be signed for the 2011-2012 school year. *See* Exhibit 11 – July 29, 2011 correspondence.

Likewise, on August 1, 2011, the AMA ESD Board of Education directed a letter to the ACS Board of Education further referencing ACS's desire to separate from the AMA ESD and directly provide special education services to their eligible students. *See* ECF Ex. 12. Defendant explains this letter is further evidence that ACS Superintendent Stauffer expressed her desire to separate ACS from the AMA ESD as early as September 8, 2010. Defendant argues that, as a result, there can be no dispute in this case that the decision to terminate the relationship between ACS and the AMA ESD was solely at the direction of ACS through their Superintendent.

In conjunction with amending the current ISD Plan (ECF No. 13 Ex. 5), the AMA ESD initiated several meetings with Superintendents from the local constituent school districts identified in the Plan. ECF No. 13 Ex. 13. Initially, Superintendent Stauffer expressed her intention to participate in the ISD Plan amendment process. ECF No. 13 Ex. 134 The AMA ESD cooperated with the request of Superintendent Stauffer and rescheduled the ISD Plan Amendment meeting for September 30, 2011. ECF No. 13 Ex. 15. On September 29, 2011, Superintendent Stauffer indicated

that it would be her preference to pursue ISD Plan amendments by way of civil complaint rather than attend the meeting scheduled the next day between the AMA ESD and the Superintendents for the local constituent school districts.  ECF No. 13 Ex. 17.  Stauffer, on behalf of ACS, declined to participate with the ISD Plan Amendment process from August of 2011 to November of 2011. The meetings regarding the ISD Plan Amendment moved forward and the proposed ISD Plan was nearing a point that approval could be sought from the AMA ESD Board of Education when the instant litigation was commenced.

After the discovery that eligible students may no longer be receiving proper special education programs and services as a result of ACS' termination of the 2010-2011 Authorization and failure to execute the 2011-2012 Authorization, the AMA ESD pursued a complaint with the Michigan Department of Education ("MDE"). ECF No. 13 Ex. 20. The matter was filed with the MDE on October 3, 2011. The MDE complaint addresses ACS's alleged failure to provide the special education services to students with IEPs or to contract for those services with the AMA ESD or some other qualified provider.  The MDE has issued a "Part 8 Report" concluding that ACS is out of compliance by refusing to execute the annual contract for 2011-2012. AMA ESD's complaint pursued through the MDE is now pending in an appeals process. ECF No. 13 Exs. 9, 24.

## I.    Standard of Review

### A.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may take the form of either a facial or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). Facial attacks challenge the sufficiency of the pleadings themselves. *Id.* Factual attacks, on the other hand, challenge the factual existence of subject matter

jurisdiction, regardless of what is or might be alleged in the pleadings. *Id.*

When adjudicating a motion to dismiss based upon a facial attack, the Court must accept all material allegations of the complaint as true and must construe the facts in favor of the non-moving party. *Ritchie*, 15 F.3d at 598 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). In contrast, a factual attack contests the validity of the facts alleged as support for subject-matter jurisdiction. *Ritchie*, 15 F.3d at 598. With a factual challenge, no presumption of truthfulness arises for either party, and the court must weigh the evidence to determine its power to hear the case. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). The court may consider both the pleadings and evidence not contained in the pleadings. *Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000).

**B.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir.1993). When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation."

*Papasan v. Allain,* 478 U.S. 265, 286 (1986). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S.Ct. 1937, 1949 (2009). Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The Sixth Circuit has held that a court may consider allegations contained in the complaint, as well as exhibits attached to or otherwise incorporated in the complaint, all without converting a motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### C.   Rule 56 Motion for Summary Judgment

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  If the opposing party fails to raise  genuine issues of fact and the record

indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## II.   Discussion

The superintendent of public instruction has a duty to require each intermediate school board to submit a plan pursuant to Mich. Comp. Laws § 1711, in accordance with special education rules, to be approved by the superintendent of public instruction and rules addressing requirements for the plans and procedures for submitting them. Mich. Comp. Laws § 1701. Part 31 of the Revised School Code, Mich. Comp. Laws § 380.1, et. seq., imposes the duty on the board of local school districts to develop the maximum potential of each student with a disability in its district in accordance with the ISD Plan. Mich. Comp. Laws § 380.1751(1). To satisfy this obligation, the local school district may either: (1) provide the services on their own; or (2) contract with the local intermediate school district, in this case, AMA ESD, or another entity to provide the special education services. Mich. Comp. Laws § 380.1751(1)(a) & (b). The latter is commonly referred to as a "1751 contract."

-9-

The AMA ESD Plan, in place since 2002, requires the Authorization to address the terms upon which these services will be provided. ACS was unwilling to sign the Authorization for the 2011-2012 school year. If ACS and Superintendent Stauffer believe that the Authorization or the ISD Plan is in any way unlawful or in violation of the IDEA, Defendant argues that they must first raise their claims with the MDE. The MDE has jurisdiction to review complaints related to such violations and also has the requisite expertise to determine whether the ISD Plan is being violated. Under the IDEA and corresponding state law, there is an administrative process that allows for and requires these Plaintiffs to first pursue their complaint with the MDE. *See* MARSE 340.1701a(c) (defining "complaint" as a complaint that a public agency is not in compliance with the ISD Plan for the delivery of Special Education and Related Services); ECF No. 13 Ex. 22 at 9-10. A response from Plaintiffs would be helpful to understand why the complaint process available from the MDE was not utilized to resolve the underlying dispute before seeking judicial interview.

Plaintiffs next request that the AMA ESD reimburse ACS on an on-going basis for services it provides to students, including costs for special education programs and related services. Defendant argues that this request is directly contrary to the ISD Plan and would constitute a unilateral amendment of the Plan by the Court. ECF No. 13 Ex. 5 at 12-13, 16-17. Defendant construes Plaintiffs' Complaint as, in effect, requesting that the Court judicially amend the Plan funding process. ISD Plans are to be modified through a collaborative process involving input from local constituent districts, public school academies, and the Parent Advisory Council ("PAC"). Defendant contends that ACS representative Stauffer has for months been unwilling to express her ISD Plan amendment requests during the ISD Plan amendment process which is ongoing and required under state law and rules. The Plan amendment process is underway and, to date ACS, as with all

-10-

constituent local school districts, is entitled to participate in the amendment process. Defendant asserts that ACS's description of, and rationale for, its desired ISD Plan amendments is important but must be shared with school districts, especially where ACS seeks to change the distribution formula that is applied to all constituent local school districts. Until the Plan amendment process is finalized, i.e. final draft amended Plan is adopted by the AMA ESD Board of Education, provided by MDE Superintendent Flanagan, and administrative hearings held on any Plan objections that are filed, Defendant suggests that the Court should not interfere and change the funding distribution process that is currently in full effect.

Pursuant to MARSE Rule 340.1836, any constituent local school district, public school academy, or the parent advisory committee may file objections with the intermediate school district, in whole or in part, to an approved intermediate school district plan or a plan modification that has been submitted to the superintendent of public instruction for approval. Upon the filing of an objection, a hearing will be held before an officer designated by the Department of Education to make findings of fact and conclusions of law, and the officer will recommend to the superintendent of public instruction whether the plan or modification to the plan would be approved as submitted, approved with other modifications, or the objections granted as submitted. Any party can make written exceptions to the hearing officer's findings and recommendations, and the superintendent of public instruction renders a final decision on the matter. MARSE 340.1836. The parties' papers do not reflect that such an objection was made in this case nor do the parties explain why an objection was not made or if an objection pursuant to Rule 340.1836 is required before pursuing judicial review. It is also unclear what changes to the ISD Plan were unacceptable to ACS and if any students or parents challenged individual IEDs. Additionally, the parties do not explain what amendments

-11-

were made during the ISD Plan amendment process that ACS chose not to participate in. Supplemental briefing will be requested to address these issues. The Court would also like an explanation of the nature of the dispute between ACS and AMA ESD leading up to the filing of the instant case and any efforts made on ACS's part to achieve the amendments it believed were necessary prior to filing the instant case.

Defendant, however, also argues that there was no underlying requirement for the AMA ESD to continue to provide special education services to the eligible ACS students after ACS gave written notice of its termination of the Authorization in June of 2011. ECF No. 13 Ex. 4. In this case, the 1751 contract for AMA ESD to provide special education programs and services to ACS had been perfected on an annual basis via execution of the Authorization, by operation of an automatic renewal provision in the event of non-signature, or by failure to terminate the agreement within the time period specified in the ISD Plan. ECF No. 13 Ex. 5 at 4-5. Defendant believes that ACS's June 7, 2011 written termination notice which precluded the operation of an automatic self-renewal provision, and its subsequent refusal to enter into the Authorization for the 2011-2012 school year, excused the AMA ESD from having to provide any special education services or programs to any ACS students. An exception has been made for two ACS students where AMA ESD was identified as the operating district in the students' IEPs. These two students will continue to receive special education programs and / or services directly from the AMA ESD for the balance of their current IEPs.

### A.   Exhaustion of Administrative Remedies

Plaintiffs' Complaint contains claims by ACS, Superintendent Stauffer and three ACS students through their guardians. ECF No. 1. Plaintiffs are seeking monetary damages rather than

seeking relief under the procedures and remedies provided under the IDEA, 20 U.S.C. § 1400, et. seq. In order to receive funds under the IDEA, a local school district is required to certify to the state educational agency that they are providing special education programs and services in accordance with the state's policies and procedures. *See* 20 U.S.C. § 1413(a)(1); *Schaffer ex rel v. Weast*, 546 U.S. 49, 52-53 (2005). To qualify for these funds, a state must establish a "policy that assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(l); *Bd. of Educ. v. Rowley*, 458 U.S. 176, 180-81 (1982); *Jenkins v. Carney-Nadeau Public School*, 201 Mich. App. 142, 144-145 (1993). Michigan participates in the IDEA federal grant program through the Michigan Mandatory Special Education Act ("MMSEA"). Mich. Comp. Laws § 380.1701, et. seq., *Jenkins*, 201 Mich. App. at 144. The IDEA and its implementing regulations, 34 C.F.R. Part 300, and the MMSEA and its implementing administrative rules, MARSE 340.1700, et. seq, as amended, comprehensively regulate the provision of special education programs and service to children with disabilities in Michigan. The IDEA requires a state to ensure students with disabilities between the ages of three and twenty-one residing in that state receive a free appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A), 34 C.F.R. § 300.121(a).

Plaintiffs bringing claims under the IDEA are generally required to exhaust their administrative remedies. *Donoho ex rel Kemp v. Smith County Bd. of Educ.*, 21 F. App'x 293, 296 (6th Cir. 2001); *Covington v. Knox County School System*, 205 F.3d 912, 915 (6th Cir. 2000); *Crocker v. Tennessee Secondary School Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir 1989). The procedures for a due process claim are set forth by the MDE. ECF No. 13 Ex. 21. The guardian Plaintiffs who have proceeded with their claims on behalf of the three ACS students have not filed any due process claims. When parents dispute the manner in which disabled children are being

-13-

educated and treated in a school environment, Congress, through the IDEA, intended parents and school personnel to attempt to consensually resolve their differences and voluntarily develop and implement education-related programs that best serve the interests of each child. If they cannot do so, they must proceed to an administrative hearing process before they resort to litigation in a federal or state court.

To implement this Congressional intent, the State of Michigan established the ("MMSEA"), Mich. Comp. Laws § 380.1701, et. seq., to provide students with disabilities and their parents or guardians the opportunity to have an impartial administrative law judge (ALJ) with expertise in such matters hear, make findings, and try to resolve complaints and disagreements related to the education of disabled students. Had the guardian Plaintiffs in this case initiated due process hearing complaints, this would have allowed an impartial state-provided ALJ to make fact findings and provide his or her expertise. The revelation of the actual facts may have demonstrated that Plaintiffs' allegations were unfounded, and that no programs or services have been wrongfully withheld. If Plaintiffs' claims were of substance, the ALJ could have fashioned a remedy under the IDEA to resolve the harm short of filing suit in federal court. However, Plaintiffs did not utilize the due process procedures and remedies Congress and the Michigan legislature provided them. Defendant argues that they thus cannot proceed with their Complaint because they did not exhaust their administrative options under the IDEA and MMSEA, 20 U.S.C. § 1415(l), *SE as next friend of AE v. Grant County Bd. Of Educ.*, 544 F.3d 633 (6th Cir. 2008); *Hayes v Unified School District No* 377, 877 F.2d 809 (10th Cir 1989); *Franklin v Frid*, 7 F. Supp. 2d 920 (W.D. Mich. 1998); *Waterman v Marquette-Alger Intermediate School District*, 739 F. Supp. 361 (W.D. Mich. 1990). Plaintiffs' Complaint does not address whether they have attempted to exhaust their administrative remedies under the IDEA.

-14-

## 1.   IDEA's Exhaustion Requirements

IDEA's exhaustion rule is a judicial construction of the statutory provision that authorizes civil actions to enforce IDEA. Specifically, IDEA Section 615(i)(2)(A) provides:

> Any party aggrieved by the findings and decision made under subsections (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A). Plaintiffs argue that Section 615(i)(2)(A) must be read together with Section 615(1), which identifies legal claims and theories that are not subsumed within IDEA and are not subject to IDEA's exhaustion rule:

> Rule of construction. Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title VI of the Rehabilitation Act of 1973, or other federal laws protecting the rights of children with disabilities, except that before the filing of such a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (t) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part.

20 U.S.C. § 1415(1). Section 615(1), thus, places non-IDEA causes of action concerning the rights of disabled students, whether based on constitutional or statutory grounds, outside the scope of IDEA's exhaustion rule, except to the extent they seek relief that is also available under IDEA.

Plaintiffs submit that there are several well-established exceptions to IDEA's exhaustion rule, including at least three that are pertinent to Defendant's Motion. First, IDEA exhaustion is not required where the state or a state agency has allegedly violated IDEA's "stay-put" provision, 20 U.S.C. § 1415(j). Second, IDEA exhaustion is not required where the relief sought by the plaintiff does not arise from rights conferred by IDEA or is not available under IDEA. Third, IDEA exhaustion is not required in cases where the parties would be required to participate in a state

administrative process as opposed to an impartial due process hearing. Plaintiffs argue that these exceptions, taken together, embrace all of the claims they have alleged in these cases.

### a.   IDEA's "stay-put" provision

Plaintiffs contend that IDEA's exhaustion rule does not apply to claims seeking to enforce IDEA's "stay-put" provision, 20 U.S.C. § 1415(j). In *Murphy v. Arlington Central School District*, 297 F.3d 195, 199 (2d Cir. 2002), a student's parents filed an action in the district court seeking an order to compel defendant to pay their child's tuition for the 1999-2000 school year at a private school during the pendency of the administrative process challenging the public school's placement of the student.  The court noted:

> The administrative process is 'inadequate' to remedy violations of § 1415(j) because, given the time-sensitive nature of the IDEA's stay-put provision, 'an immediate appeal is necessary to give realistic protection to the claimed rights. ' [citation omitted].

Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review because were a child to be ejected from his or her current educational placement while the administrative process sorts out where the proper interim placement should be, then the deprivation is complete. *Id.*; *Tenn Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1966); *see also ND v. Hawaii Dep't of Ed.*, 600 F.3d 1104, 1110-1111 (9th Cir. 2010).

The "stay put" provision commands that during the pendency of any proceedings to challenge a change in a child's IEP, the child shall remain in the current educational placement unless the school authorities and parents agree otherwise. *Tenn Dep't of Mental Health & Mental Retardation*, 88 F.3d at 1472. In other words, if the parents disagree with the new IEP, the child may "stay put" in his current educational placement while the decision is appealed. *Id.* The "stay put" provision is

-16-

premised on the rationale that preservation of the status quo, rather than an inappropriate reaction to an emergent situation, provides for the best interests of the child. *Id.* The "stay put" provision insures that a school cannot eject a child and change his placement without complying with due process requirements. *Id.* (citing *Tokarcik v. Forest Hills School Dist.*, 665 F.2d 443, 453 (3rd Cir.1981), *cert. denied*, 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982)). It also guarantees consistency in a child's learning environment until a challenge to an existing placement or a new placement has successfully established whether a different alternative placement is necessary. *Id.* The "stay put" rule was intended to protect children from unilateral displacement. *Id.* (citation omitted). The rule is intended "to prevent school officials from removing a child from the . . . classroom over the parents' objection, pending completion of the review proceedings." *Id.* (citing *Andersen by Andersen v. District of Columbia*, 877 F.2d 1018, 1023 (D.C. Cir.1989)).

Here, Plaintiffs submit that Count I of the Complaint seeks to enforce IDEA's stay-put provision. Specifically, Count I alleges that the IDEA and Michigan law, including the ISD Plan, requires AMA ESD to provide certain special education and related services to all eligible ACS students, including the students who are individual Plaintiffs. Plaintiffs then allege that AMA ESD violated the IDEA and Michigan law by unilaterally terminating those services. Finally, Plaintiff contends that Count I alleges that IDEA's stay-put provision requires AMA ESD to continue providing these services pending the final disposition of this case. Because IDEA's exhaustion rule does not apply to claims seeking to enforce IDEA's stay-put provision, Plaintiffs request that Defendant's motion to dismiss or for summary judgment on Count I be denied.

Defendant notes that the "stay-put" provision found in 20 U.S.C. § 1415(j) requires a local school district to maintain the then-current physical placement of the student when a dispute under

IDEA is invoked. First, however, Defendant notes that Plaintiffs have not initiated any administrative proceedings that would invoke the "stay-put" provision. Therefore, in this case, there is no need to "enforce" the "stay-put" provision under IDEA because that provision of the statute has not been triggered. Second, even if the "stay-put" provision were applicable, the placement of the Plaintiffs Students has, to date, remained unchanged according to ACS. Because the special education programs and services continue to be provided within the District, the "stay-put" provisions is inapplicable to excuse Plaintiffs' failure to exhaust their administrative remedies before pursuing their IDEA claims in this Court. *See* ECF No. 13 Ex. 23. Regardless of whether Plaintiffs have initiated a proceeding in order to trigger the stay-put provision, none of the students have been transferred to a new placement and thus have not been unilaterally displaced, or faced unilateral displacement, in order to invoke the "stay put" provision of the IDEA.

### b. Exhaustion requirements where exhaustion would be futile or inadequate

Next, Plaintiffs contend that IDEA's exhaustion rule does not apply where exhaustion would be futile or inadequate. *Honig v. Doe*, 484 U.S. 305,326-27 (1988). IDEA exhaustion is futile and inadequate when the relief sought by the plaintiff does not arise from or is not available under IDEA. Section 1415(1) states:

> Rule of construction. Nothing in this title shall be construed to restrict or limit ... federal laws protecting the rights of children with disability, except that before the filing of such a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under the part.

20 U.S.C. § 1415(1). Stated otherwise, the IDEA exhaustion rule only applies to claims "seeking relief that is also available under [IDEA]."

Plaintiffs argue that the Sixth Circuit decisions cited in Defendant's brief all involve cases

where plaintiffs sought relief that was available under IDEA. In *Crocker v. Tennessee Secondary School Athletic Assoc.*, 873 F.2d 933 (6th Cir. 1989), the plaintiff alleged that the defendant had violated the IDEA by refusing to waive a requirement for athletic eligibility but the plaintiff made no argument that the relief he was seeking was not available under IDEA. In *Donoho ex reI Kemp v. Smith County Bd. of Ed.*, 21 F. App'x 293 (6th Cir. 2001), the plaintiff alleged defendant had violated the IDEA by not faithfully implementing his IEPT Report. Similarly, in *SE v. Grant County Bd. of Ed.*, 544 F.3d 633 (6th Cir. 2008), *cert. den.*, 129 S.Ct. 2075 (2009), the plaintiff asserted a claim under Section 504 of the Rehabilitation Act for "compensatory education" and attorneys' fees. *Id.* at 642, relief that is available under the IDEA. *See also Sch. Comm. of Burlington v. Dep't of Ed.*, 471 U.S. 359,370-71 (1985).

Plaintiffs suggest that *Covington v. Knox County School System*, 205 F.3d 912 (6th Cir. 2000) best addresses their argument that the IDEA exhaustion rule does not apply to this case. In *Covington*, the plaintiff alleged that the defendant had violated his constitutional and statutory rights by repeatedly locking him in a time-out room for extended periods of time as a disciplinary measure. The district court dismissed plaintiff's complaint based on IDEA's exhaustion rule, noting that "it [was] undisputed that the use of the 'timeout' room as a disciplinary measure was a matter mentioned in plaintiff's IEP." *Id.* at 914. The Sixth Circuit reversed and articulated a variety of reasons for holding the plaintiff's claims were not subject to IDEA's exhaustion rule, including the fact that the relief of money damages sought was not available under IDEA.

Plaintiffs also contend that Counts II through IX of the original complaint do not arise from IDEA. Beyond this, Plaintiffs contend that these claims are seeking relief that is not available under IDEA. Specifically, Plaintiffs are seeking compensatory and punitive damages. As Plaintiffs contend

their claims, except Count I, do not arise under IDEA and are not seeking relief available under IDEA, IDEA's exhaustion rule does not bar Plaintiffs from asserting Counts II through IX in this Court in the first instance and Defendant's motion to dismiss or for summary judgment on these claims for failure to exhaust their administrative remedies will be denied. Thus, Plaintiffs only argue that this exception to the exhaustion requirement offers an excuse for Plaintiffs' failure to exhaust their administrative remedies prior to seeking judicial review of their claims in Count I. Whether Counts II through IX should be dismissed because they hold a sufficient nexus to their claims arising under the IDEA and have been lodged in advance of exhausting their administrative remedies will be discussed more fully after the Court receives the parties' supplemental briefing.

### c.   IDEA's exhaustion requirement where the parties would be required to participate in a state administrative process as opposed to an impartial due process hearing

IDEA has two administrative mechanisms for resolving complaints. The first mechanism is commonly referred to as the "impartial due process hearing." A state may either provide a one-tier or a two-tier due process hearing system. In a one-tier system, the state educational agency ("SEA") conducts the hearing and renders a decision. *See* 20 U.S.C. § 1415(f)(1)(A). In a two-tier system, the local school district, or local educational agency ("LEA"), conducts the hearing in the first instance, and the hearing is conducted by a local hearing officer. *See* 20 U.S.C. § 1415(g). If either party is "aggrieved by the findings and decision rendered in such a hearing [it] may appeal such findings and decision to the State educational agency." *See* 20 U.S.C. § 1415(g)(1). The IDEA provides, as a minimum standard of impartiality, that a hearing officer shall not be "an employee of the State educational agency or the local educational agency involved in the education or care of the child." 20 U.S.C. § 1415(f)(3)(A)(i)(I). Under both systems, either party may file an action in state or federal court for review of the state level hearing officer's decision. 20 U.S.C. § 1415(i)(2).

Prior to July 1, 2006, Michigan had a two-tier system, under which LEAs and the state contracted with hearing officers, many of whom served as hearing officers at both levels. *See McLaughlin v. Holt Pub. Schs. Bd. of Educ.,* 320 F. 3d 663, 667 (6th Cir.2003). In 2005, Michigan Governor Jennifer Granholm issued Executive Order 2005-01, which created the State Office of Administrative Hearings & Rules ("SOAHR") and transferred to it most of the State's administrative hearing functions and administrative rule-making authority. Pursuant to that order, special education due process hearings were transferred from Michigan Department of Education ("MDE") to SOAHR, with the individual hearing officers responsible to SOAHR instead of MDE. Executive Order 2005-01 became effective on March 27, 2005.[1]

The second procedure is commonly referred to as the "state complaint process. Plaintiffs

---

[1] In 2004, the MDE issued proposed rules relating to special education due process hearings. Among other things, those proposed rules changed the State's due process hearing system from a two-tier to a one-tier system. On May 20, 2005, after the administrative hearing and rule-making functions were transferred to SOAHR, SOAHR issued final regulations that were to become effective on July 1, 2006. In early 2006, the Michigan Protection & Advocacy Service, Inc. ("MPAS") filed two lawsuits in the Ingham County Circuit Court seeking to enjoin the State from implementing the new process. The lawsuits alleged that: (1) MDE and SOAHR violated the Administrative Procedures Act because MDE never lawfully adopted the special education due process rules and SOAHR did not have authority to promulgate regulations regarding due process hearings; (2) MDE and SOAHR violated Executive Order 2005-1 by failing to enter into an interagency agreement as required by Executive Order 2005-1; and (3) MDE violated the IDEA by delegating its supervision responsibility to SOAHR, by failing to enter into an interagency agreement ensuring SOAHR's compliance with the IDEA, and by failing to require SOAHR to reissue the due process hearing rules for public comment with adequate notice of hearing prior to adopting them. After these lawsuits were filed, the MDE and SOAHR entered into an interagency agreement ("Interagency Agreement"). In addition, the MDE promulgated the due process hearing rules as emergency rules ("Emergency Rules") in response to MPAS' allegation that SOAHR had not properly adopted the rules. Both the Interagency Agreement and the Emergency Rules were adopted on June 30, 2006, and became effective the following day. The adoption of the Interagency Agreement rendered two of MPAS' claims moot and the parties thereafter settled the lawsuits. Pursuant to the Emergency Rules, the two-tier system continued to apply to due process hearings requested before July 1, 2006. *See Traverse Bay Area Intermediate School Dist. v. Michigan Dept. of Educ.*, No. 5:06-CV-139, 2007 WL 2219352, at *3 (W.D. Mich. July 27, 2007).

contend that it is well established that the "state complaint process" is elective and, therefore, a plaintiff is not required to exhaust the "state complaint process" before filing a civil action. Plaintiffs advance cases from other circuit courts addressing whether Congress intended the IDEA rights to be enforceable under § 1983 to support this contention.

Here, Plaintiffs argue that the impartial due process hearing mechanism is not available to Plaintiffs because they have not alleged issues that are "hearable" in that forum. MARSE 340.1724f(4). Additionally, Plaintiffs submit that if they choose to file a state complaint, that complaint would be investigated by Defendant, raising impassable due process barriers, MARSE 340.1853, and they are not required to exhaust the state complaint procedure before filing a civil action.

The case that most closely addresses the administrative remedy exhaustion requirement is *Traverse Bay Area Intermediate School Dist. v. Michigan Dept. of Education.*  The case, however, addresses it in passing and explains that school districts may present their claims either through the state complaint process or through a due process hearing, but does not state whether one process is mandatory and another is not.  Plaintiffs contend that MARSE 340.1724f does not provide for a due process hearing on the claims Plaintiffs are alleging in the instant suit.  *See* MARSE 340.1724f(3)(a)-(i) (outlining the matters upon which a due process hearing may be initiated). However, Plaintiffs do not explain why their claims are excluded, and additional briefing providing this explanation, as well as Defendant's response, would be helpful.  Supplemental briefing from the parties is likewise necessary to more adequately address whether the state complaint procedure is required before filing a civil action in Michigan in order to satisfy the exhaustion requirement. Other courts have noted that the state complaint process is, in general, inadequate, and if the state complaint process is not

mandatory in Michigan or the Sixth Circuit, then Plaintiffs' failure to exhaust their administrative remedies may be excusable under this exception. *See Megan C. v. Independent Sch. Dist. No. 625*, 57 F. Supp. 2d 776, 780-81, 790 (D. Minn. 1999)(discussing the differences between the two procedures and noting that the IDEA requires exhaustion of the due process hearing procedures prior to seeking judicial review, while the state complaint procedure, being "different in purpose, scope and procedure," and its completion would not be sufficient by itself to confer jurisdiction upon a district court or by virtue of the exhaustion requirement) (citing *Ass'n. for Comm. Living in Colorado v. Romer*, 992 F.2d 1040, 1045 (10th Cir. 1993); *Richards v. Fairfax County Sch. Bd.*, 798 F. Supp. 338, 342 (E.D. Va.1992)).

## 2.    Ongoing Administrative Review

To the extent an administrative review is currently ongoing, Defendant notes that it was initiated by the AMA ESD and not by Plaintiffs. That matter, known as a "Part 8 Complaint," was filed with the MDE on October 3, 2011.  The MDE issued a ruling concluding that ACS is out of compliance given their refusal to execute the annual contract for the 2011-2012 school year and the matter is currently in an appeals process. ECF No. 13 Ex. 24.  There has not been any fact finding or ruling by the investigator assigned to review this pending state complaint. Defendant argues that because Plaintiffs have not alleged their exhaustion of the IDEA procedures and remedies, (1) does not give this Court "subject matter jurisdiction" over Plaintiffs' claims and the claims should be dismissed pursuant to Rule 12(b)(1), and (2) the Complaint does not "state a claim upon which relief can be granted," and should be dismissed pursuant to Rule 12(b)(6). Supplemental briefing from the parties providing additional explanation as to the status of the Part 8 Complaint, the possible outcomes of those proceedings, and how the Part 8 Complaint differs from an administrative remedy

that Plaintiffs could have initiated is required for the Court to adequately address Defendant's argument.

**B.      Defendant's Motion to Dismiss or for Summary Judgment on Plaintiffs' non-IDEA Federal Claims and Plaintiffs' State Law Claims**

Defendant also argues that the factual allegations in the Plaintiffs' Complaint support the conclusion that their remaining claims have a nexus with the IDEA and, if Plaintiffs' IDEA claim is dismissed, Defendants submit that the remaining claims must be dismissed as well. Defendant's arguments regarding the remaining federal counts and Defendant's arguments regarding Plaintiffs' state law claims will be addressed after the Court receives the parties' supplemental briefing.

### III.   Conclusion

Accordingly, it is **ORDERED** that the parties are **DIRECTED** to file supplemental briefing on the issues outlined in this order on or before **May 14, 2012.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 17, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 17, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS

---

-24-