UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ATLANTA COMMUNITY SCHOOLS, et al.,

      Plaintiffs,

                                    Case Number 11-14361

v.                                  Honorable Thomas L. Ludington

ALPENA-MONTMORENCY-ALCONA
EDUCATIONAL SERVICE DISTRICT,

      Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT, DISMISSING
CERTAIN CLAIMS WITH PREJUDICE, DISMISSING PLAINTIFF
TERESA STAUFFER'S CLAIMS WITH PREJUDICE, DENYING PLAINTIFFS'
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT, AND
GRANTING PLAINTIFFS' SECOND MOTION TO FILE AN AMENDED COMPLAINT**

On October 3, 2011, Plaintiffs filed a complaint alleging nine claims arising from a

dispute between Plaintiff Atlanta Community Schools ("ACS") and Defendant Alpena-

Montmorency-Alcona Educational Service District ("AMA ESD") related to the provision of

special education and related services to eligible ACS students. In lieu of filing an answer, AMA

ESD filed a motion to dismiss or for summary judgment, advancing essentially five arguments.

First, AMA ESD contends that Plaintiffs failed to exhaust their administrative remedies before

filing their complaint; second, that Plaintiffs ACS and Stauffer lack standing to assert claims

under the Individuals with Disability Education Act (the "IDEA"), 20 U.S.C. § 1400, et seq.

Third, AMA ESD argues that certain claims should be dismissed because they are raised under

"general" statutes, while Plaintiffs have alleged claims under more "specific" statutes. Fourth,

AMA ESD contends that Plaintiffs' state law claims should be dismissed because they are

duplicative of their federal claims. Finally, AMA ESD asserts that Plaintiffs' claims seeking

monetary damages under the Michigan Constitution must be dismissed because monetary damages are not available. The facts of the case are set forth in the Court's April 18, 2012, order. ECF No. 24.

On April 18, 2012, the Court ordered supplemental briefing to address the following: (1) An explanation from Plaintiffs about why the Michigan Department of Education ("MDE") complaint process was not utilized before seeking judicial review; (2) whether an objection was made pursuant to Michigan's Revised Administrative Rules for Special Education ("MARSE") Rule 340.1836 to the 2011-2012 ISD Plan Amendment, and if not, an explanation why, and further, whether such an objection is required before pursuing judicial review; (3) what changes to the ISD Plan were unacceptable to ACS and if any students or parents raised similar concerns with respect to individual IEDs; (4) an explanation of the amendments made during the intermediate school district ("ISD") Plan amendment process that ACS chose not to participate in; (5) additional explanation of the nature of the dispute between ACS and AMA ESD leading up to the filing of the instant case, and any efforts made on ACS's part to achieve the amendments it believed were necessary prior to filing the instant case; (6) an explanation of why Plaintiffs contend that their claims are excluded from matters upon which a due process hearing might be initiated pursuant to MARSE Rule 340.1724f(3)(a)-(i); (7) whether the state complaint procedure is required before filing a civil action in Michigan in order to satisfy an exhaustion requirement; and (8) additional explanation about the status of the Part 8 Complaint, the possible outcomes of those proceedings, and how the Part 8 Complaint differs from an administrative remedy that Plaintiffs could have initiated.

The parties provided supplemental briefing on these issues on May 14, 2012. Plaintiffs subsequently filed a motion to strike AMA ESD's supplemental brief for providing information

beyond the scope requested by the Court. Although AMA ESD's response goes beyond the scope of the directed supplemental briefing, the information provided is helpful to the context of the dispute and the status of the parties' relationship. Plaintiffs' motion to strike AMA ESD's supplemental brief will thus be denied. For the reasons provided herein, AMA ESD's motion to dismiss or for summary judgment will be granted in part and denied in part, Plaintiffs' motion to file a first amended complaint will be denied, and Plaintiffs' motion to file a second amended complaint to include their claim appealing the final report from the MDE will be granted.

## I.    Discussion

### A.    Supplemental Briefing Regarding AMA ESD's Motion to Dismiss Count I for Failure to Exhaust Administrative Remedies

#### 1.    Why Plaintiffs did not utilize the complaint process available from the MDE to resolve the underlying dispute before seeking judicial review

Plaintiffs do not specifically address this inquiry, but generally contend that utilizing the complaint procedure is not required before bringing an action under the IDEA.

#### 2.    Whether an objection was made pursuant to MARSE Rule 340.1836, and if not, an explanation why, and if such an objection is required before pursuing judicial review

Again, Plaintiffs do not specifically address this inquiry but appear to contend, as will be discussed below, that because a state complaint procedure is not required before pursuing a judicial action, it was unnecessary to make such an objection.

AMA ESD emphasizes that Plaintiffs did not make any objection to the ISD plan that had been in place since 2002.  While ACS did file an objection relating to the 2011-2012 ISD Plan Amendment, ACS did not object to the content of the proposed plan.  ACS only objected to the fact that AMA ESD did not include four provisions that Stauffer proposed during a November 10, 2011, meeting, even though they were not supported by the other superintendents. ACS was provided the ability to participate in the Plan Amendment process, but declined.

AMA ESD explains that the objection filed by ACS was assigned to ALJ Robbins. The matter proceeded to oral argument on a Motion for Summary Disposition sought by AMA ESD. In an Opinion dated March 20, 2012, the matter was dismissed and the objections to the 2012 ISD Plan amendments filed by ACS were overruled. ECF No. 26 Ex. 4. As of the date of AMA ESD's supplemental brief, there had been no appeal of that decision, and the time period for filing exceptions had passed. Having received no appeal or exceptions to the Proposal for Decision, Superintendent of Public Instruction, Michael P. Flanagan, issued a Final Decision adopting the Proposal for Decision and approved the AMA ESD Plan. ECF No. 26 Ex. 5.

The objections to the ISD Plan Amendment were recently overruled by the MDE. ECF No. 26 Ex. 5. The ISD Plan has been approved by the MDE and by MDE Superintendent Flannigan. The Order dated April 25, 2012, signed by Superintendent Flannigan, noted that the objections filed by ACS lacked merit and that no exceptions had been filed.

### 3. What changes to the ISD Plan were unacceptable to ACS and did any students or parents challenge individual IEDs

Plaintiffs note that one of the obligations of an intermediate school district is to develop an intermediate school district plan in cooperation with its constituent local school districts. Mich. Comp. Laws § 380.1711(a). At all times pertinent to this matter, AMA ESD had an ISD Plan. The Plan was approved by AMA ESD and the State Superintendent of Public Instruction. Under the approved Plan, AMA ESD specifically undertook to provide programs and services for students enrolled in the local districts. These services included (1) coordinating "public awareness activities"; an important element of the special education process, and (2) providing diagnostic services, including evaluations.

The diagnostic services that AMA ESD was to provide were reflected in a chart found on Page 5 of the Plan. These included psychological services and evaluations, school social work, occupational and physical therapy, services of a teacher consultant for the visually impaired, evaluations and services for learning disabled students, those cognitively or emotionally impaired, and students with an early childhood developmental delay.

The Intermediate School District Plan separately identified the special education classroom programs to be offered, whether they were to be provided by AMA ESD or by one of the constituent local districts. ECF No. 25 Ex. at 6. The Plan further provided for the distribution of funds to the constituent districts from AMA ESD's county millage for special education, often referred to as "Public Act 18 monies." ECF No. 25 Ex. at 12. The "Authorization to Operate Special Education Programs and/or Services," central to the dispute in this matter, is referenced only on Page 4 of the Plan. The Plan provides that the Authorization "outlines responsibilities related to program operation, conducting IEP team meetings, and arranging and conducting due process hearings should they be requested."

Under Plaintiffs' interpretation, the Authorization is limited. They argue that it is not an all-encompassing precondition to AMA ESD meeting its statutory obligations or other responsibilities under the Plan.  At the outset, it is important to note that the Authorization to Operate Special Education Programs and Services has no statutory basis. Its only legal significance is that it is referenced in the approved AMA ESD Plan.

The Authorization presented by AMA ESD to ACS for the 2011-2012 school year (ECF No. 25 Ex. B) sought changes to the AMA ESD Plan that Plaintiffs thought exceeded the limited parameters for the Authorization defined in the ISD Plan. Plaintiffs note that the most significant changes are reflected in Attachment C to Plaintiffs' supplemental brief. ECF No. 25 Ex. C.

**4.    What amendments were made during the ISD Plan amendment process that ACS chose not to participate in**

Plaintiffs do not provide a response to this inquiry.

**5.    Additional explanation of the nature of the dispute between ACS and AMA ESD leading up to the filing of the instant case and any efforts made on ACS's part to achieve the amendments it believed were necessary prior to filing the instant case**

Plaintiffs contend that the dispute with AMA ESD began more than a year before the filing of the Verified Complaint.  They offer a discussion of the statutory special education delivery model in Michigan to assist the Court in understanding the issues in this proceeding. Providing for the education of students with special needs in the State of Michigan is set forth in statutes and regulations at both the federal and state levels. The IDEA and its implementing regulations, codified at 34 CFR, Part 300, include a number of provisions a state must follow in order to receive funding through the United States Department of Education.

The State of Michigan has separately adopted the Michigan Mandatory Special Education Act ("MMSEA"), Mich. Comp. Laws § 380.1701 et seq., and the Michigan Administrative Rules for Special Education ("MARSE"), R 340.1700 et seq., to govern the provision of special education programs and services by Michigan public school districts. Under the statutory scheme, the Michigan State Board of Education has the duty to "[develop], establish, and continually evaluate and modify" a state plan for the delivery of special education programs and services in cooperation with intermediate school districts. Mich. Comp. Laws § 380.1701(a). Each intermediate school district, in turn, has the duty to "[develop], establish, and continually evaluate and modify" its plan for special education in cooperation with its constituent districts. Mich. Comp. Laws § 300.1711a. Each intermediate school district is required to submit its plan to the State Board of Education for approval. *Id.* Local school districts are required to provide special education programs and services, to the extent the same are required or can be provided

-6-

"in accordance with the intermediate school district special education plan. . . ." Mich. Comp. Laws § 380.1751(1).

The State of Michigan annually distributes federal and state special education monies to AMA ESD, as an intermediate school district. Under the statutory scheme, AMA ESD delivers certain services and provides educational programs to students with disabilities, and also distributes funding to the local districts to meet additional needs. Taxpayers in the districts that comprise AMA ESD have also approved a local special education millage to be used for special education purposes. These monies are also to be distributed by AMA ESD in accordance with the ISD Plan.

Plaintiffs explain that the tension between AMA ESD and ACS goes back some time. The ISD Plan that was in effect at the time this lawsuit commenced (ECF No. 25 Ex. A) was developed by AMA ESD in cooperation with the local school districts and approved by the Michigan State Superintendent of Public Instruction. During the summer of 2010, prior to the start of the 2010-2011 school year, AMA ESD requested that ACS execute an "Authorization to Operate Special Education and Related Services." ACS was reluctant because it believed the Authorization would modify the ISD Plan in a number of ways: (1) excluding the classroom program for the hearing impaired; (2) empowering AMA ESD to act as the representative of ACS and sign IEPs on behalf of ACS; (3) making the costs of due process hearings for both ACS and AMA ESD a responsibility of ACS; (4) introducing proportionate sharing of transportation costs and assigning transportation responsibility for "schools of choice" students; (5) assigning ACS the costs relating to evaluations for non-special education students; (6) introducing a new formula for allocating Multidisciplinary Evaluation Team staff time; (7) identifying prioritization for functions and services of members of evaluation teams; (8) establishing bill-back procedures

for AMA ESD's costs of providing programs and services; (9) assigning ACS responsibility for the cost of independent educational evaluations; (10) assigning ACS the cost of AMA ESD programs and services for schools of choice students from outside the geographical boundaries of AMA ESD; and (11) creating special provisions with regard to Center Program Students, expelled students, and required assurances.

On August 17, 2010, Plaintiff Teresa Stauffer, then Superintendent of ACS, met with Brian Wilmot, AMA ESD's Superintendent. Ms. Stauffer advised Wilmot that ACS was dissatisfied with the services that ACS' students with disabilities were receiving from AMA ESD and that she was particularly dissatisfied with the interactions between AMA ESD personnel and ACS. Nevertheless, ACS signed the Authorization, as requested.

On September 8, 2010, Ms. Stauffer appeared at a public meeting of the Board of Education of AMA ESD. There, Ms. Stauffer brought to the attention of the Board a number of unresolved issues that she stated were jeopardizing the necessary working relationship between ACS and AMA ESD. Among the concerns were that AMA ESD personnel had been dishonest in their dealings with ACS personnel; had taken actions that were not consistent with the AMA ESD's mission statement; had not communicated with the public in an honest and ethical way; had been unwilling to cooperate with ACS staff; had failed to provide special education and related supplemental services in a cost effective manner; had failed to maintain a safe and healthy learning environment; and had not taken into account the needs of ACS students.

Ms. Stauffer reviewed some of the efforts that had previously been taken to attempt to resolve these issues: (1) The ACS Superintendent had met with the AMA ESD Superintendent and Special Education Director; (2) The Superintendent and Board President of ACS had met with the AMA ESD Superintendent; (3) The Superintendent and Board President of ACS had

met with representative AMA ESD Board members; (4) The Board President of ACS had met with the Board President of AMA ESD; (5) The Superintendent and Board President of ACS had met with the Superintendent and Board President of AMA ESD.

Throughout the 2010-2011 school year, matters between AMA ESD and ACS continued to deteriorate. In a letter dated June 7, 2011 (ECF No. 25 Ex. K), Ms. Stauffer informed AMA ESD that ACS wished to terminate the Authorization to Operate Special Education Programs and/or Services which was then effective through the 2010-2011 school year. The stated purpose of this action was to avoid the automatic renewal of the Authorization which would otherwise remain in effect for the ensuing school year. Separately, ACS requested the opportunity to meet and discuss certain concerns with AMA ESD before executing what had been presented as an Authorization for the 2011-2012 school year (ECF No. 25 Ex. B).

Plaintiffs explain that it was never ACS' intent to sever its relationship with AMA ESD with this action. Rather, ACS sought to reach an understanding before entering into an Authorization for the 2011-2012 school year. AMA ESD has continuously, and Plaintiffs believe erroneously, characterized Ms. Stauffer's June 7, 2011 letter as the termination of the relationship between the parties beginning with the 2011-2012 school year. AMA ESD ignored ACS' request for a discussion on the issues and instead withheld approximately $85,000 in funds Plaintiffs contend were due and owing for special education programs and services. It is unclear, however, why Plaintiffs consider these funds due absent entering into an Authorization for the 2011-2012 school year. Plaintiffs contend that AMA ESD also threatened to discontinue special education services to ACS' students with disabilities; services that AMA ESD was required to provide pursuant to the ISD Plan, with or without the signed Authorization.

In July, 2011, ACS engaged counsel to achieve an Authorization to Operate agreement with AMA ESD for the 2011-2012 school year. The agreement would include certain revisions to the document that had previously been presented by AMA ESD. Counsel for ACS sent an email communication to Brian Wilmot, the AMA ESD Superintendent, asking whether there was "some room for discussion." No response was received.

ACS convened a meeting of its Board of Education on August 1, 2011. The purpose of the meeting was for the ACS Board to discuss retaliatory actions with its legal counsel, and the actions that had been taken by AMA ESD. A contingent of AMA ESD Board members attended the August 1, 2011 ACS Board meeting, together with AMA ESD's Superintendent, Brian Wilmot. ACS' attorney, who was present at the meeting, identified the issues of concern from ACS' point of view, and invited the AMA ESD group to discuss resolution.

Plaintiffs assert that the AMA ESD representatives refused the request for a discussion. Instead, they provided the ACS Board a check for the $85,000.00 that AMA ESD had withheld, without any explanation. The AMA ESD contingent also read and delivered a prepared letter that had been signed by all of the Board members. ECF No. 25 Ex. E. The letter referred to Superintendent Stauffer's statements at the September 8, 2010 AMA ESD Board meeting, and the continued falling-out between AMA ESD and ACS. The August 1, 2011 letter from the AMA ESD Board, in Plaintiffs' opinion, renewed AMA ESD's threat to discontinue special education services for ACS students unless ACS executed the Authorization, as previously presented. The letter concluded by inviting ACS to leave the AMA ESD and join another intermediate school district if it was not satisfied with the services it received.

Counsel for ACS wrote to the AMA ESD Superintendent on August 3, 2011 to register the ACS Board's negative reaction to the August 1, 2011 letter. ECF No. 25 Ex. F. This

-10-

communication also reminded AMA ESD that ACS remained a part of the AMA ESD. The letter asked that AMA ESD confirm that it would meet its obligation to provide special education services to ACS' students with disabilities pursuant to the Intermediate School District Plan. In the August 3, 2011 letter, ACS' attorney maintained there was no legitimate reason for AMA ESD to refuse to provide services to ACS' students at the beginning of the 2011-2012 school year.

The parties did make an effort to resolve the dispute during August 2011. Discussions were held between the parties' attorneys and proposed settlement documents were exchanged. As the Labor Day weekend approached, the parties appeared to be making progress, but several outstanding issues had not yet been resolved. Despite what ACS believed to be ongoing good-faith discussions, AMA ESD's attorney sent a letter to ACS' counsel on September 2, 2011. ECF No. 25 Ex. G. The letter served as notification to ACS that, as the matter had not been resolved, AMA ESD was terminating service for ACS' students. ACS's counsel responded by letter on September 6, 2011, which noted, among other things, that AMA ESD had not been cooperating with ACS to develop a modified Intermediate School District Plan. ACS's counsel requested that legal counsel for AMA ESD confirm that, until the matter was resolved, AMA ESD would provide ACS with its pro-rata share of the special education funding received by AMA ESD. This would permit ACS to provide the services to ACS students that had previously been provided by AMA ESD.

On September 6, 2011, AMA ESD sent a letter to parents of ACS' students who had been receiving services from AMA ESD, advising that those services would be discontinued. ECF No. 25 Ex. I. AMA ESD also published notice in the Montmorency County Tribune on September 7, 2011.

Over the next several weeks, counsel for the respective parties had telephone conversations and exchanged written proposals to attempt to reach an amicable resolution. Those efforts were not successful. On October 3, 2011, Plaintiffs commenced the instant action.

**6.   An explanation as to why Plaintiff's claims are excluded from matters upon which a due process hearing may be initiated pursuant to MARSE Rule 340.1724f(3)(a)-(I)**

Plaintiffs submit that, in order to fully address the questions raised by the Court, it would be helpful to provide a brief discussion of the rationale for the required exhaustion of remedies under the IDEA. Under the IDEA, a parent (or, in some instances, a school district) has the right to request an impartial "due process hearing" concerning educational placement of a child, or the provision of a free appropriate public education for such child. 20 U.S.C. § 1415(b)(6), (f). The reason for requiring exhaustion of the administrative remedy in such matters was stated by the Sixth Circuit Court of Appeals in the *Crocker v. Tennessee Secondary School Athletic Ass'n*, 873 F.2d 933 (6th Cir. 1989). There, the Court stated:

> The policies underlying this exhaustion requirement are both sound and important. . . . Federal courts — generalists with no expertise in the educational needs of handicapped students — are given the benefit of expert factfinding by a state agency devoted to this very purpose. . . . Were federal courts to set themselves up as the initial arbiters of handicapped children's education needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act. . . .

873 F.2d at 935.

Thus, according to Plaintiffs, the right to a "due process hearing," and the required exhaustion of such an administrative remedy, is limited to matters relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child. *Id.*

Plaintiffs submit that none of their claims are encompassed by the above language. There are no disputed issues concerning "the identification, evaluation, or educational placement" of

the children; no disputes over what would be considered a "free appropriate public education" for those students. The only issue in dispute is whether AMA ESD remains responsible for providing educational programs and services for the ACS students absent an executed Authorization to Operate. Plaintiffs contend this is a legal question to be resolved by the Court and does not require expertise in educational matters or the needs of students with disabilities. The lawfulness of AMA ESD's actions are not dependent on the particular circumstances or educational needs of the students. With that background, Plaintiffs suggest a review of the separate Counts of its Verified Complaint in order to demonstrate the inapplicability of AMA ESD's exhaustion argument. For example, in Count I of the Verified Complaint, Plaintiffs allege that AMA ESD violated the IDEA by discontinuing the provision of diagnostic services, including evaluations, for ACS students with certain suspected disabilities. Plaintiffs have further alleged that AMA ESD has terminated the provision of all "related services" to all ACS students, including the three named Student Plaintiffs.

Plaintiffs note that the allegations here involve what are commonly referred to as "systemic violations." They concern all ACS students with disabilities or suspected disabilities, and the outcome is not dependent on the unique needs of any individual. No expertise in educational matters or the needs of students with disabilities is required in order to determine whether AMA ESD is providing what it is contractually or statutorily required to do. Plaintiffs argue that administrative exhaustion is not required in such circumstances. *Handberry v. Thompson*, 446 F.3d 335, 344 (6th Cir. 2006).

### 7.    Whether the state complaint procedure is required before filing a civil action in Michigan in order to satisfy the exhaustion requirement

Plaintiffs explain that their research has disclosed no Michigan authority addressing the question of whether exhaustion of a Part 8 Complaint is mandatory. A "Part 8 Complaint" is a

complaint filed under Part 8 of MARSE Rules 340.1831 through 340.1855. Plaintiffs initially identify that the Rules themselves make no reference to exhaustion. More importantly, the Michigan Part 8 Complaint process was adopted to comply with the federal regulations under the IDEA and its statutory predecessors, and Plaintiffs suggest that this Court look to other jurisdictions for the premise that exhaustion of a special education "complaint" procedure is not required.

Plaintiffs contend that the Ninth Circuit Court of Appeals, in *Porter v. Manhattan Beach Unified School District*, 307 F.3d 1064 (9th Cir. 2002), examined the issue of exhausting a special education complaint procedure. Plaintiffs contend that analysis, which remains unquestioned by other circuit authority, is directly responsive to the question.

In *Porter*, the Ninth Circuit began its analysis by saying:

> Distinct from the IDEA's due process requirements, the U.S. Department of Education promulgated regulations pursuant to its general rulemaking authority requiring each recipient of federal funds, including funds provided through the IDEA, to put in place a complaint resolution procedure ("CRP"). 34 C.F.R. §§ 300.660-300.662 (citing 20 U.S.C. § 1221e-3 as authority for rules); [cite omitted]. The regulations require each state education agency to adopt written procedures for "resolving any complaint" regarding the education of a child with a disability. 34 C.F.R. § 300.660(a).

307 F.3d at 1067.

The Court continued:

> We are not aware of any court that has held that the IDEA requires exhaustion of a state's CRP in addition to exhaustion of the due process hearing system before filing suit for violations of the IDEA. The Second and Third Circuits have rejected such claims.

307 F.3d at 1071.

*Porter* quoted the following language from a decision of the Second Circuit Court of Appeals in *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir. 1987):

-14-

> Significantly, § 1415(f) does not specify, directly or by incorporating its legislative history, exhaustion of possible CRP remedies. In fact, research has unearthed no statute or regulation that requires exhaustion of CRP remedies prior to commencing a § 1983 action based on alleged EHA violations. . . . Turning to the [Education for All Handicapped Children] caselaw, we note that the Supreme Court has never suggested that the CRP need to be invoked or exhausted prior to seeking federal court involvement in construing the EHA pursuant to § 1415.

307 F.3d at 1071-72.

The court continued its discussion:

> We presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation. [Cite omitted.] The IDEA was last amended in 1997. [Cite omitted.] Despite the holdings of the Second and Third Circuits that complainants need not exhaust a state's CRP before suit to enforce IDEA rights . . . Congress did not include a CRP exhaustion requirement in these subsequent amendments. Thus, we infer that Congress did not intend a different interpretation of the scheme it enacted in the IDEA.

307 F.3d at 1072.

In conclusion, the court observed:

> It is additionally highly relevant that the U.S. Department of Education has never interpreted its CRP regulations as creating a mandatory step before suit alleging an IDEA violation. Because the CRP "is a creature of the [Department's] own regulations, [its] interpretation of it is, under our jurisprudence, controlling unless 'plainly erroneous or inconsistent with the regulation.'" [Cite omitted.] According to the Department, the CRP is intended to "allow [parents and school districts] to resolve differences without resort to more costly and litigious resolution through due process," not to create a mechanism that must be exhausted in addition to the due process system.

*Id.*

## 8.   Additional explanation as to the status of the Part 8 Complaint, the possible outcomes of those proceedings, and how the Part 8 Complaint differs from an administrative remedy that Plaintiffs could have initiated

Plaintiffs contend that the Part 8 Complaint was filed by AMA ESD in response to Plaintiffs' initiation of the instant litigation. Following an investigation, which did not include a formal hearing, the Michigan Department of Education Office of Special Education issued a

Final Report on November 23, 2011. The Report concluded that ACS was required to execute the Authorization to Operate Special Education Programs and/or Services.

ACS requested reconsideration of the Final Report, which was denied as untimely. ACS has moved to file a Second Amended Complaint in the instant matter to add a count to the Verified Complaint challenging the Final Report.

Most recently, the MDE responded to ACS' request for a waiver of the minimum number of instructional days per week so it could operate a four-day weekly calendar. ECF No. 26 Ex. 1. The MDE denied the request for the waiver by ACS citing ACS' continued refusal to submit the requested proof of compliance with its November 23, 2011 order to sign the Authorization. The April 19, 2012 correspondence from the MDE cited serious issues relating to the continued noncompliance by ACS with respect to special education programs and/or services being provided to its eligible students. MDE stated its intention to proceed with fiscal sanctions as a result. *Id.* AMA ESD asserts that the imposition of fiscal sanctions by the MDE is a serious matter that is not routinely exercised.

Finally, AMA ESD notes that all administrative avenues have been exhausted with respect to the Part 8 Complaint and the Court could "exercise its discretion." ECF No. 26 at 6. It is unclear, however, what AMA ESD means regarding the Court exercising discretion. It appears that AMA ESD is conceding that the IDEA's exhaustion requirements have now been met, even though ACS did not initiate the proceedings. ACS and Ms. Stauffer acknowledged in Plaintiffs' response to AMA ESD's motion for summary judgment that they lack standing to assert an IDEA claim. ECF No. 15 at 15. AMA ESD's motion to dismiss Count I will thus be granted as to Plaintiffs ACS and Stauffer.

### 9.     Additional Information

AMA ESD further explains that during an ACS Board of Education meeting that took place on the same day the MDE notified ACS of the sanctions that were being imposed, Superintendent Stauffer and Board President Janette Sarkozi tendered their resignations. ECF No. 26 Ex. 7; Ex. 2. AMA ESD notes that it does not appear that any reason was offered by Ms. Stauffer or Ms. Sarkozi for their resignations. ECF No. 26 Ex. 2. Since the resignation of Superintendent Stauffer, ACS has appointed an interim Superintendent. ECF No. 26 Ex. 3.

AMA ESD argues that Ms. Stauffer's resignation prevents her from proceeding on any claim raised in the Verified Complaint, or the first and second proposed Amended Complaints, because she now lacks standing. AMA ESD requests that her claims be dismissed and that any motion to amend seeking to add claims on her behalf against AMA ESD be denied.

### B.     Conclusions on AMA ESD's Motion to Dismiss

### 1.     Plaintiffs' Federal Claims

The Court's April 18, 2012 order noted Plaintiffs' argument that Counts II through IX do not arise under the IDEA and do not seek relief available under the IDEA. Administrative exhaustion is thus not required. AMA ESD argues that the factual allegations in the Plaintiffs' Complaint have a nexus with the IDEA and that administrative exhaustion is required. Plaintiffs acknowledge that the three students have a disability and receive "special education" services pursuant to their respective IEPs. Compl. pars. 6-11. The students receive special education programs and services under the IDEA. AMA ESD emphasizes that nearly all of the factual allegations in the Plaintiffs' Complaint, taken as true, relate to the provision of special education programs and services, classroom services, or other IDEA-related services.

AMA ESD's motion to dismiss Count I as to the Student and Parent Plaintiffs, as well as their motion to dismiss Counts II through IX for failure to exhaust administrative remedies will be denied.  As Plaintiffs note in their supplemental briefing, the relief sought is excluded from matters upon which a due process hearing may be initiated pursuant to MARSE Rule 340.1724f(3)(a)-(i), and the state complaint procedure does not need to be utilized in Michigan before a civil action is pursued.

However, ACS only pleads claims pertaining to violation of its rights in Counts V and X; Ms. Stauffer only pleads claims pertaining to her rights in Counts VI and XI of the proposed first amended complaint, but does not plead any claims for violation of her rights in the original complaint. The other Counts, including all the counts in the original complaint, plead claims for alleged injuries to the Student and Parent Plaintiffs.  Thus, to the extent ACS believes it has plead claims in Counts II-IV and VI-IX of the original complaint, and to the extent Ms. Stauffer believes she has plead any claims in the original complaint, these claims will be dismissed. Plaintiffs' motion to amend the complaint to include Ms. Stauffer's two claims for violation of her first amendment rights will be discussed below.

## 2.    Plaintiffs' State Law Claims

Since the IDEA and the Michigan Mandatory Special Education Act ("MMSEA") specifically address education of students with disabilities and the MPDCRA is a general statute, AMA ESD argues that the more specific statutes (IDEA and MMSEA) control, and supersede the Michigan Persons with Disabilities Civil Rights Act, ("MPDCRA"), which is the successor statute to the Handicappers Civil Rights Act ("HCRA"). Therefore, AMA ESD requests that the Court dismiss the MPDCRA claim because specific statutes prevail over general statutes

addressing the same subject matter. *Jenkins*, *supra*, at 145-46; *Woolcott v. Bd. of Educ.*, 134 Mich. App. 555 (1984).

As noted above, the HCRA prohibits discrimination on the basis of a handicap. *See* Mich. Comp. Laws § 37.1402(b); M.S.A. § 3.550(402)(b). The MSEA, on the other hand, affirmatively requires the state to provide "special education programs and services designed to develop the maximum potential of every handicapped person." Mich. Comp. Laws § 380.1701(a); M.S.A. § 15.41701(a). This means not only refraining from excluding, expelling, limiting, or otherwise discriminating against handicapped students, but also affirmatively providing them with special programs and services designed to maximize their potential. While the MSEA addresses education of disabled children more specifically than the HCRA, the rule for applying the more recent and specific statute only applies where the two conflict. *See, e.g.*, *Nat'l Ctr. for Mfg. Sciences*, 221 Mich. App. 541, 549 (1997). Here, the statutes do not conflict and Plaintiffs submit it would be error to dismiss their MPDCRA on this basis.

Next, AMA ESD argues that the regulations issued pursuant to the MSEA govern the preparation and content of the IEPs and provide an administrative procedure for appeals. The HCRA does not address IEPs, and the MSEA is also more specific than the HCRA regarding the source of the educational programs. Plaintiffs' state law claims are also based on the IDEA, and relate to the AMA ESD implementing and providing special education programs and services in conjunction with an IEP. Thus, AMA ESD argues that the state law claims under PWDCRA (Count VII), Article I, § 2 Equal Protection (Count VIII) and Article I, § 17 - Due Process (Count IV) should also be dismissed if dismissal of Plaintiffs' federal claims is appropriate. Because Plaintiffs' federal claims are not being dismissed, Defendant's motion to dismiss Counts VII, VIII and IV will be denied.

-19-

Finally, relating to Plaintiffs' claims arising under the Michigan Constitution, AMA ESD argues that the claims fail as a matter of law. Provisions of the Michigan Constitution that protect individual rights do not "require implementing legislation in order to operate as a limitation on the exercise of governmental power." *Dampier v. Wayne Co.*, 233 Mich. App. 714, 731 (1999) (quoting *Detroit Branch NAACP v. Dearborn*, 173 Mich. App. 602, 614 (1988). In order to bring a cause of action for a violation of rights guaranteed by the Michigan Constitution, there must be no other means of vindication. *Cremonte v. Mich. State Police*, 232 Mich. App. 240, 250-52 (1998). Plaintiffs have pursued identical causes of action alleging Equal Protection and Due Process violations under 42 U.S.C. § 1983 and, therefore, AMA ESD submits they are barred from pursuing identical constitutional claims arising under state law.

While the Michigan Supreme Court has limited the potential of monetary damages for a claimed violation of the Michigan Constitution, it is also clear that such a claim for damages "may be recognized in appropriate cases." *Smith v. Michigan*, 428 Mich. 540, 544 (1987). Were the Court to determine that this is not an appropriate case for money damages related to AMA ESD's violations of the Michigan Constitution, Plaintiffs argue that their claims should not be dismissed to the extent that they have also sought declaratory or injunctive relief for those violations. *Schwartz Ambulance Service, Inc. v. Genesee County*, 666 F. Supp. 2d 721, 726 (E.D. Mich. 2009). Even where money damages are unavailable for violations of the Michigan Constitution, prospective relief is still available. *Sharp v. Lansing*, 464 Mich. 792, 802 (2001).

The Michigan Supreme Court noted in *Jones .v Powell*, 462 Mich. 329 (2000), that the *Smith* decision "only recognized a narrow remedy against the state on the basis of the unavailability of any other remedy." *Jones*, 462 Mich. at 336. Because Plaintiffs maintain their federal claims for monetary damages, a damage remedy under the Michigan Constitution is

-20-

unavailable. AMA ESD's motion to dismiss Plaintiffs' claims for violation of the Michigan Constitution will be granted to the extent Plaintiffs are seeking monetary damages, but will otherwise be denied.

## C.    Plaintiffs' Motions to Amend the Complaint

In their first motion, Plaintiffs seek to add two counts that were inadvertently omitted from the original complaint. The two new counts are: Count VI-Violation of First Amendment to the United States Constitution by Ms. Stauffer against AMA ESD; and Count XI- Violation of Article I, §§ 3 and 5 of the Michigan Constitution of 1963 by Ms. Stauffer against AMA ESD. Plaintiffs' second motion seeks to add an additional count to appeal the administrative decision of the Michigan Department of Education requiring ACS to execute the authorization at issue and to initiate corrective action of make-up sessions for IEP required special education programs and related services. Each motion and AMA ESD's opposition to the motion will be discussed in turn.

## 1.    Standard of Review

The Federal Rules of Civil Procedure allow for an amended complaint to be filed within twenty-one days after an answer has been filed. After that, the plaintiff "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a).  While Rule 15(a)(2) states that the "court should freely give leave when justice so requires," the court may deny a motion to amend if it concludes that the pleading as amended could not withstand a motion to dismiss. *Head v. Jeilico Housing Authority*, 870 F.2d 1117, 1123 (6th Cir. 1989). Several elements may be considered in determining whether to permit an amendment. Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and

futility of amendment are all factors which may affect the decision. *Id.* A court may deny a motion to amend where the amendment would be futile, and "[g]enerally, an amendment would be futile if the amended complaint could not withstand a l2(b)(6) motion." *Siddock v. Grand Trunk Western RR Inc.*, 556 F. Supp. 2d. 731, 739 (W.D. Mich. 2008).

### a. Plaintiffs' Motion to File a First Amended Complaint

AMA ESD argues that Plaintiffs' proposed First Amended Complaint could not withstand such a motion. *Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007), raised the bar for the standard of pleading necessary to survive a 12(b)(6) motion. The Supreme Court further expounded upon this standard of pleading in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), where it stated:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched

-22-

as a factual allegation"). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context- specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief."

*Id.* (citations omitted).

Ms. Stauffer seeks to add two identical claims for violation of her right to free speech under Counts VI (Federal Constitution) and XI (Michigan Constitution) in the proposed first amended complaint. The language contained in the First Amendment of the United States Constitution and the Michigan free speech clause are similar, and provide that "[t]he rights to free speech under the Michigan and federal constitutions are coterminous. Thus, federal authority construing the First Amendment may be used in construing the Michigan Constitution's free speech guarantee." *Burns v. Detroit*, 253 Mich. App. 608, 620-21 (2002) (citations omitted), *modified by* 468 Mich. 881 (2003).

Three elements are required to sustain a First Amendment retaliation claim: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). AMA ESD contends that Ms. Stauffer cannot establish any of the elements in order to state a cause of action.

First, AMA ESD argues that Ms. Stauffer's Freedom of Speech claims fail on their face because, at all times relevant, she was acting in her official capacity as Superintendent of the

Atlanta Community Schools. Thus, any speech made in conjunction with the discharge of her official duties as Superintendent is not protected speech. The United States Supreme Court has held that public employees making statements pursuant to their official duties are not speaking as citizens for First Amendment purposes. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").

In this case, AMA ESD contends that Ms. Stauffer is a public employee by virtue of her employment as Superintendent for ACS, a local constituent school district, although AMA ESD does not retain any control over Ms. Stauffer's employment. Ms. Stauffer was acting solely within her capacity as the Superintendent of ACS when negotiating with the AMA ESD for special education programs and services for the 2011-2012 school year. Moreover, AMA ESD argues that Ms. Stauffer exercised her discretion as Superintendent when she decided not to sign the authorization enabling the AMA ESD to provide eligible ACS students with special education programs and services.

Plaintiffs' proposed First Amended Complaint refers to correspondence dated September 8, 2010 from the AMA ESD Board of Education indicating that AMA ESD was terminating services (1) because ACS failed to sign the required agreement; and (2) because Ms. Stauffer "expressed her desire to separate from [AMA ESD]" and asked AMA ESD to release ACS "from this ISD to join another intermediate school district." Proposed First Am. Compl. at 11-12, par. 38(I). The proposed Amended Complaint does not challenge the accuracy of AMA ESD's allegations relating to Ms. Stauffer's decision, as Superintendent, not to sign the annual authorization. AMA ESD contends that these allegations concede that Ms. Stauffer was acting in

her official capacity during the relevant time period, and that it would be unreasonable to infer that Ms. Stauffer's actions were anything other than the discharge of her duties and responsibilities as Superintendent for ACS.

Further, AMA ESD contends that, as Superintendent, Ms. Stauffer's signature is required on the Authorization to Operate Special Education Programs and Services which had been executed for the previous school years. ECF No. 13 Exs. 6-8 (showing the superintendent signature is required on said Authorization). AMA ESD's Board and Superintendent also attended an ACS Board of Education meeting regarding the execution of the annual authorization to provide special education programs and services for the 2011-2012 school year. Proposed First Amended Compl. at 10-12, par. 38(I).

"Employees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government." *Garcetti* 547 U.S. at 423-24. "When a public employee speaks pursuant to employment responsibilities, however, there is no relevant analogue to speech by citizens who are not government employees." *Id.* AMA ESD contends that, as a result, Ms. Stauffer's speech at AMA ESD's Board meeting was not speech by a private citizen when, as the undisputed facts show she was there in her official capacity on behalf of ACS.

Plaintiffs reply that Ms. Stauffer engaged in protected speech when she addressed the Board of Education of the AMA ESD in a public forum, on a public matter, as a party with a business relationship with AMA ESD. The First Amendment protects citizens from government retaliation in response to unwanted speech on a matter of public concern. *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668 (1996). An issue is considered a matter of public concern when it

relates to "any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). Whether the speaker's motivation is for personal gain or for the greater good is not determinative. The key consideration is "whether the employee's speech in fact touches on a matter of public concern." *Banks v. Wolfe County Bd. of Ed.*, 330 F.3d 888, 894 (6th Cir. 2003) (citing *Connick* at 148-49). It is not "necessary for the entire expression to address matters of public concern, as long as some portion of the speech does." *Id.* at 149. Finally, to establish a causal connection, the plaintiff must demonstrate that the defendant's actions were "motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, at 395.

AMA ESD alternatively argues that it did not take any adverse action against Ms. Stauffer based on any protected conduct. In a retaliation claim, the harm suffered is the adverse consequences which follow from the plaintiff's constitutionally protected action. *Thaddeus-X*, 175 F.3d at 394. "The term 'adverse action' is drawn from employment case law; examples in that context include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote." *Id.* at 396. If an official's acts would not "chill or silence a person of ordinary firmness from future First Amendment activities," then a claim of retaliation is not viable. *Id.* at 398.

Plaintiffs first claim that AMA ESD "retaliated against Teresa Stauffer for exercising her right to free speech."  They allege AMA ESD (1) threatened to not provide ACS students with special education and related services; and (2) not providing ACS students with special education and related services. *See* Proposed First Amended Compl. pars. 93(A), (B) and 131(A), (B). AMA ESD argues threatening to discontinue special education services does not penalize Ms. Stauffer personally. To the contrary, AMA ESD emphasizes that these programs and services are being provided by ACS as a result of Ms. Stauffer's refusal to sign the annual authorization for the 2011-2012 school year.

Plaintiffs also allege that AMA ESD retaliated against Ms. Stauffer by releasing a letter to the media accusing her of declining special education services from the AMA ESD, and blaming her for the breakdown in the relationship.  AMA ESD also mailed the letter to ACS parents, and published a notice in the Montomorency County Tribune. *See* Proposed First Amended Compl. pars. 93(C)-(E); and 131(C)-(E). AMA ESD submits that the evidence it has submitted indicates that all statements made by the AMA ESD are true. Plaintiffs' suggestion that AMA ESD must remain mute as to why it no longer provides special education programs and services to eligible ACS students is not reasonable.

Plaintiffs advance *Umbehr* as the leading case on government retaliation against a non-employee. In *Umbehr*, the plaintiff was under contract as the exclusive waste hauler for the county. During the term of this contract, the plaintiff was an "outspoken critic" of the county. *Id* at 671. Specifically, the plaintiff spoke at board meetings open to the public and relayed his displeasure with the county's handling of financial matters.  *Id* at 671. The plaintiff alleged that his contract with the county as a waste hauler was terminated in response to his critical statements. *Id* at 671-72.

The district court concluded that, as a party to the contract with the County, the plaintiff was not entitled to first amendment protection. *Id.* at 672. Ultimately, the district court was reversed by the court of appeals and the Supreme Court affirmed. *Id.* The Supreme Court concluded that, as a government contractor, the plaintiff was entitled to first amendment protection against termination in response to critical statements. *Id.* at 674. The Court reasoned that the plaintiff's "contractual . . . relationship [with the county] provides a valuable financial benefit, the threat of the loss of which in retaliation for speech may chill speech on matters of public concern by those who, because of their dealings with the government, 'are in the best

-27-

position to know what ails the agencies for which they work.'" *Id.* at 674 (quoting *Waters v. Churchill*, 511 U.S. 661,674 (1994)).

Plaintiffs contend that, like the plaintiff in *Umberh*, Ms. Stauffer was a steward to a contractual relationship with AMA ESD. Ms. Stauffer spoke at a public board meeting on matters of public concern and questioned AMA ESD's policies and allegedly taking actions inconsistent with its mission statement. Proposed First Am. Compl. pars. 8-9. Finally, like *Umbehr*, AMA ESD took adverse action against Ms. Stauffer by terminating a business relationship with ACS and committing other harassing acts, including making disparaging statements about her at a public school board meeting, releasing negative statements about her to the press, and mailing negative letters to each of the parents in her school district. Plaintiffs also note that, unlike in *Garcetti*, Ms. Stauffer was not retaliated against by her employer, and the import of government employers being provided sufficient discretion to manage their operations is thus not an issue. *See Garcetti*, 547 U.S. at 422.

Even if Ms. Stauffer was engaged in protected speech on a matter of public concern during the course of her employment, the fact that AMA ESD terminated the services offered to ACS students does not satisfy the requirement that Ms. Stauffer be subjected to an adverse action or was deprived of some benefit. Moreover, as noted by AMA ESD, the term "adverse action" is drawn from employment case law and examples in that context include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote. *Thaddeus-X*, 175 F.3d at 389 (citing *Umbehr*, 518 U.S. 668 (1996) (nonrenewal of contract); *Perry v. Sindermann*, 408 U.S. 593 (1972) (same); *Pickering v. Board of Education*, 391 U.S. 563 (dismissal)). The adverse actions that Plaintiffs' allege Ms. Stauffer suffered do not satisfy the second element required to

sustain a First Amendment retaliation claim. The claims Plaintiffs seek to add thus would not survive summary judgment.

### b.   Plaintiff's Motion to File a Second Amended Complaint

Plaintiffs' motion for leave to file a second amended complaint seeks to add an additional count to appeal the administrative decision of the Michigan Department of Education requiring ACS to execute the authorization at issue and to initiate corrective action of make-up sessions for IEP required special education programs and related services.

AMA ESD opposes Plaintiffs' request. AMA ESD explains that the MDE decision was decided under state law and rules in response to the Part 8 Complaint filed by AMA ESD because Plaintiffs failed to provide special education services to its eligible students. MDE concluded that ACS was in violation of Section 1751 of the Michigan Revised School Code (Mich. Comp. Laws § 380.1751) and in violation of MARSE Rule 340.1722(2). As part of the corrective action in regard to that Part 8 Complaint, MDE ordered ACS and Ms. Stauffer to sign the Authorization to Operate Special Education Programs and Services (covering the period July 1, 2011 to June 30, 2012); to begin implementation of IEPs of students covered by that Authorization; and to begin make-up sessions of IEP-required programs and services that students missed from September 6, 2011 to the time the Final Report was issued. ECF No. 21-2.

ACS and Ms. Stauffer had until December 8, 2011 to request reconsideration under MDE procedures related to Part 8 Complaints. *Id.* Because ACS and Ms. Stauffer did not request reconsideration until January 13, 2012—over one month after the deadline—MDE denied the Request for Reconsideration as untimely.

Between the November 23, 2011 Final Report and January 13, 2012, Ms. Stauffer did not act on MDE's Order of Corrective Action. On January 18, 2012, MDE staff wrote to Ms.

Stauffer and instructed her to forward the proof of compliance related to the Part 8 Complaint to MDE's attention. ECF No. 22 Ex. B. Ms. Stauffer again took no action. On February 13, 2012, MDE again wrote to her, instructing that she forward the proof of compliance no later than February 17, 2012. ECF No. 22 Ex. C. MDE further informed Ms. Stauffer that, if ACS did not comply with the directive to prove compliance, MDE would initiate sanctions against ACS under MARSE Rule 340.1855(1)(c) and (e). *Id.* Under the provisions, MDE could withhold state and federal funds from a local school district that refuses to comply or correct known violations of the law, fails to cooperate with the MDE, or continues to repeat violations of the law. MARSE Rule 340.1855(1)(c) and (e).

On February 17, 2012, ACS and Ms. Stauffer sought leave in this Court to appeal the MDE decision and to seek this Court's assistance in enjoining MDE from correcting the violations. In a letter dated February 16, 2012, ACS and Ms. Stauffer advised MDE of their intent to appeal the MDE Final Report and that, "ACS will not sign the Authorization document until those proceedings have concluded." ECF No. 22 Ex. D. Ms. Stauffer alleged that the other corrective action relating to implementation of student IEPs and the make-up of missed sessions had begun. *Id.* MDE responded on February 21, 2012 and directed compliance regarding the IEP implementation and make-up sessions. ECF No. 22 Ex. E. MDE also directed Ms. Stauffer to provide specific information related to the qualifications of staff implementing the IEPs and providing make-up sessions by February 27, 2012. *Id.* Ms. Stauffer never responded to the directive.

The claim that Plaintiffs seek to add in their proposed second amended complaint is an Appeal of the MDE November 23, 2011 Final Report. Because there is no express statutory authority to appeal such a decision, AMA ESD argues that Plaintiffs' only avenue for appeal to a

court of competent jurisdiction is through Art. 6, § 28 of the Michigan Constitution and Section 631 of Michigan's Revised Judicature Act. *Hopkins v. Michigan Parole Board*, 237 Mich. App. 629 (1989); *Michigan Department of Education v. Grosse Pointe Public Schools*, 266 Mich. App. 268 (2005), *vacated on other grounds*, *Michigan Department of Education v. Grosse Pointe Public Schools*, 474 Mich. 1117 (2006). Mich. Comp. Laws § 600.631 provides that appeals from informal agency decisions are to be conducted based upon rules of the Michigan Supreme Court. Mich. Comp. Laws § 600.631. The Michigan Court Rules provide a process by which such appeals are to be adjudicated in state court. *See generally* Mich. Ct. Rule 7.104.

An appeal under Art. 8, § 28 and Section 631 of the Revised School Code must be filed within 21 of days of the date the final decision is rendered. If an appeal is not filed within that time, the appeal is untimely and must be dismissed. *Preserve the Dunes, Inc. v. Dep't of Environmental Quality*, 471 Mich. 508 (2004); *Schommer v. Dep't of Natural Resources*, 162 Mich. App. 110 (1987). In this case, the Final Report that Plaintiffs seek to appeal was issued on November 23, 2011 and received by Plaintiffs on November 28, 2011. Rather than appealing the decision under MCR 7.104 and MCR 7.101(B)(1)(a) within 21 days of the issuance of the Final Report, Plaintiffs filed a request for reconsideration which was 35 days late. The decision denying reconsideration as untimely was communicated to ACS and Ms. Stauffer on January 18, 2012. Plaintiffs then waited another 30 days before seeking to amend their Complaint as an alternative to a direct appeal. Because Plaintiffs appeal of the MDE Final Report was initiated over 80 days from the date that it was received — 59 days too late — AMA ESD contends that the claim would not survive summary judgment and should be dismissed.

Plaintiffs, however, contend that this claim is not time-barred. In *Lewis Cass Intermediate School District v M.K.*, 290 F. Supp. 2d 832 (W.D. Mich. 2003), the court

conducted an in-depth review of the process for an appeal of a State Complaint/Part 8 decision. The Court began by citing guidance from the United States Department of Education's Office of Special Education Programs ("OSEP"). The Court quoted from an OSEP communication as follows:

> Question 10: May a State complaint decision be appealed?
>
> Answer: the regulations are silent as to whether a state complaint decision may be appealed. Part B neither prohibits nor requires the establishment of procedures to permit either party to request reconsideration of a State complaint decision . . .
>
> However, if the issue(s) is still in dispute, the parent or public agency may, if they have not already done so, initiate a due process hearing . . .

290 F Supp 2d at 836.

> In *Lewis Cass*, the school district plaintiffs further argued that:
>
> . . . the appropriate forum to contest the final agency decision in a Part 8 Complaint is appeal by way of § 631 of the Revised Judicature Act, M.C.L. 600.631. Under § 631, a party aggrieved by a final agency decision would be permitted to file an action in state circuit court . . .

The Court rejected this argument, noting that "[w]hile the Districts correctly assert that the MDE provides for such an appeal, this state-established procedure cannot trump a party's right to a due process hearing granted under the IDEA." 290 F. Supp. at 837.

Based on the conclusions in *Lewis Cass*, Plaintiffs argue that their time to appeal the Michigan Department of Education decision is based on the time for requesting a special education due process hearing. Section 1415(f)(3)(C) of the IDEA provides, in relevant part:

> Timeline for requesting hearing.
>
> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis for the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

Plaintiffs contend that Michigan has no such "explicit time limitation" and Plaintiffs, therefore, have two years from the November 23, 2011 Final Report of the Michigan Department of Education to appeal the decision.

Indeed, as noted in *Lewis Cass*, while MDE "provides for [] an appeal [of an agency decision], this state-established procedure cannot trump a party's right to a due process hearing granted under the IDEA." 290 F. Supp. 2d 832. Although the authority cited by AMA ESD outlines the timeline for appealing through the state-established procedures, the language of the IDEA provides for a two-year time limit on seeking a due process hearing. The reasoning by the court in *Lewis Cass* is sound, and Plaintiffs' argument that governing time limit is two-years is persuasive.

Alternatively, even if the proposed Second Amended Complaint raised a claim that could survive a Rule 12(b)(6) motion, AMA ESD notes that this Court has the discretion to deny the Motion to Amend based upon the supplemental jurisdiction statute. Under 28 U.S.C. § 1367(a), a district court has supplemental jurisdiction to hear state law claims as part of a case involving federal claims, so long as they form part of the same case or controversy under Article III. 28 U.S.C. § 1367(a). The Court has the discretion to deny the exercise of supplemental jurisdiction where the claim raises a novel or complex issue under state law. 28 U.S.C. § 1367(a). This, AMA ESD argues, is the case here.

In particular, Plaintiffs' claim alleges that MDE misapplied a provision of the Revised School Code related to the manner in which ISD plans must be developed and the manner in which special education programs and services are delivered under the Revised School Code. ECF No. 21-12, ¶¶ 144-149. Based upon the MDE's alleged misinterpretation of this state law

provision, Plaintiffs now seek injunctive relief against MDE enjoining it from implementing the corrective action required by MDE in the Final Report. ECF No. 21-2 ¶ 1B.4.

AMA ESD submits that the manner in which the MDE interprets the Revised School Code is a state law issue. The Michigan Court Rules have a specific process to address appeals from state level agencies. Whether the "Authorization to Operate Special Education Programs and/or Services" is inconsistent with the Michigan Revised School Code and the Michigan Administrative Rules for Special Education requires the Court to review and interpret those provisions before injunctive relief can be considered against MDE. Moreover, with the addition of this claim, Plaintiffs seek to have the MDE added as a party and to have the Court enjoin MDE's enforcement powers under the Part 8 Complaint process. The underlying issue in the Part 8 Complaint process raises issues regarding MDE's authority to compel compliance with ISD Plans and the delivery of special education services to local school district. Though AMA ESD strongly rejects the idea that the Authorization constitutes a unilateral amendment of the AMA ESD Plan, the question involves novel and complex issues related to the manner in which ISD Plans are developed, implemented, and interpreted. All issues addressed at some level in state law or the MARSE. AMA ESD explains that it was unable to locate any Michigan case law addressing these questions.

AMA ESD requests that the Court exercise its discretion and decline supplemental jurisdiction over the novel and complex state law issues decided by MDE in the Part 8 Complaint. The underlying intent of the supplemental jurisdiction statute is to permit the Court to elect against exercising jurisdiction where the state courts have yet to decide the state law issues. In this case, AMA ESD asserts that the state courts are better equipped to interpret and

apply these statutes and rules in the context of the Michigan Court Rules governing appeals from state agency decisions under Article 6, § 28 and the Revised Judicature Act.

Plaintiff emphasizes that the issues underlying Count XII of the second amended complaint are simple, straightforward, and the central point of dispute in the claims already pending before the Court.  Because the majority of Plaintiffs' claims have survived AMA ESD's motion to dismiss, the Court agrees that adding Count XII of the amended complaint to appeal the final report from MDE is reasonable.  The Court will exercise its discretion to accept supplemental jurisdiction over the claim.

## II.    Conclusion

Accordingly, it is **ORDERED** that Plaintiffs' motion to strike supplemental brief (ECF No. 27] is DENIED.

It is further **ORDERED** that AMA ESD's motion to dismiss and for summary judgment (ECF No. 13) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that ACS' claims under Count I-IV and VII-IX are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff Teresa Stauffer's claims are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiffs' claim for monetary damages under Counts VIII and IX is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiffs' motion for leave to file a first amended complaint (ECF No. 16) is **DENIED**.

It is further **ORDERED** that Plaintiffs' motion to amend complaint (ECF No. 21) is **GRANTED**. Plaintiffs are granted leave to amend the complaint to include their claim appealing the final report from MDE. Plaintiffs' amended complaint is due on or before **October 1, 2012**.


s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 18, 2012


<div style="border:2px solid black; padding:10px;">

### PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 18, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>