**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

ATLANTA COMMUNITY SCHOOLS
a Michigan general powers school district;
ERIC DeROUCHIE and REGINA DeROUCHIE,
as parents and next friends of their minor son,
T.C.; and CYNTHIA PORTILLO, as parent and
next friend of her minor daughter, E.P.,

        Plaintiffs,

v.

ALPENA-MONTMORENCY-ALCONA
EDUCATIONAL SERVICE DISTRICT,
a Michigan intermediate school district, and
STATE OF MICHIGAN, DEPARTMENT OF
EDUCATION,

        Defendants.

Case No. 1:11-cv-14361

Hon. Thomas L. Ludington

---

**LUSK & ALBERTSON, PLC**
By:    Robert A. Lusk (P38122)
        Richard E. Kroopnick (P25381)
Attorneys for Plaintiffs
40950 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304-5129
Telephone: (248) 258-2850

**O'NEILL, WALLACE & DOYLE, P.C.**
By:   David A. Wallace (P24149)
       Gregory W. Mair (P67465)
Attorneys for Defendant
Alpena-Montmorency-Alcona
Educational Service District
P.O. Box 1966
Saginaw, Michigan 48605
Telephone: (989) 790-0960

---

## FIRST AMENDED COMPLAINT

Plaintiffs – Atlanta Community Schools, Eric and Regina DeRouchie, parents and next friends of their minor son, T.C., and Cynthia Portillo, parent and next friend of her minor daughter, E.P, – file this First Amended Complaint against Defendants – Alpena-Montmorency-Alcona Educational Service District and State of Michigan, Department of Education.

## <u>INTRODUCTION</u>

This is an action for relief from Defendant Alpena-Montmorency-Alcona Educational Service District (AMA ESD)'s violation of Plaintiffs' rights under the Individuals with Disabilities Education Act (IDEA), 20 USC 1400, et seq., the Americans with Disabilities Act of 1990, as amended (ADA), 42 USC 12101, et seq., Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 USC 794, the Michigan Mandatory Special Education Act (MMSEA), MCL 380.1701, et seq., the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101, et seq., and the Constitutions of the United States and the State of Michigan. Relief is also sought for retaliation on the part of AMA ESD based on Plaintiffs' exercise of those rights.

This is also an action for relief from a Final Report issued by the State of Michigan, Department of Education on November 23, 2011 (Exhibit K[1]).  The Final Report concerns a complaint filed with the Department of Education on October 3, 2011 by Susan Grulke, Special Education Director for AMA ESD.  The complaint alleged that Plaintiff Atlanta Community Schools did not renew an "annual contract" with AMA ESD that is required for the delivery of special education programs and services.  Plaintiff Atlanta Community Schools denied that it was obligated to execute this "Authorization to Operate Special Education Programs and Services."  The Department concluded that Plaintiff Atlanta Community Schools was required to execute the document and required the following "corrective action":

> 1.      Pursuant to MCL 380.1751(1)(2)(3) the district shall immediately sign [the Authorization].
>
> 2.      Pursuant to R 340.1722(2) the district shall immediately:

---

[1]Plaintiffs' Exhibits A-J were attached to their Brief in Support of Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction which was filed with this Court on October 4, 2011.

2

      a.     Begin to Implement IEPs of students covered by the contract described in [the Authorization].

      b.     Begin to make up sessions of IEP-required special education programs and related services that students missed beginning with September 6, 2011, up to the present.

Plaintiffs in this matter are the Atlanta Community Schools (ACS), a Michigan general powers school district, and two minor students with disabilities, together with their parents as next friends. The Student Plaintiffs are eligible to receive special education and related services[2] under the federal and state special education laws and are otherwise qualified to participate in programs and receive services for persons with disabilities.

The AMA ESD is a Michigan intermediate school district (ISD) within the meaning of the Michigan Revised School Code. MCL 380.601, et seq. The AMA ESD consists of the five public school districts and schools located in the Michigan counties of Alpena, Montmorency and Alcona, including the ACS (the constituent districts).

Defendant State of Michigan, Department of Education is established as a principal department of the government of the State of Michigan pursuant to Article 8, §3 of the Michigan Constitution of 1963. The Department is charged with administering the educational affairs of the State, in accordance with law.

This case arises out of the AMA ESD's unlawful, unilateral termination of Plaintiffs' rights to special education programs and related services. As a result of AMA ESD's actions, the Student Plaintiffs have lost, and will continue to lose, valuable educational opportunities and

---

[2]"Special education" is defined as specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability. 20 USC 1401(29).

"Related services" refers to "transportation, and such developmental, corrective, and other supportive services (including speech-language pathology . . . psychological services, physical and occupational therapy . . .) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children." 20 USC 1401(26).

necessary services.  Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and reasonable attorney fees and costs for AMA ESD's intentional and willful violation of their rights.  Plaintiff ACS also seeks relief from the retaliatory actions taken against it by AMA ESD based on ACS' participation in the instant litigation.

This case further arises from a Final Report issued by the State of Michigan, Department of Education on November 23, 2011 (Exhibit K).  The Department has concluded that Plaintiff Atlanta Community Schools did not comply with certain Michigan statutory provisions in refusing to execute the above-referenced Authorization.

## JURISDICTION AND VENUE

1.       Plaintiffs bring this action under the IDEA, the ADA, Section 504, the Michigan Mandatory Special Education Act, the Michigan Persons with Disabilities Civil Rights Act, and the Constitutions of the United States and the State of Michigan.  This Court has jurisdiction over the subject matter and the parties pursuant to 28 USC 1331 and 2201.  The Court also has supplemental jurisdiction over the Plaintiffs' state claims in Counts VI through X pursuant to 28 USC 1367.

2.       Venue is proper in the Eastern District of Michigan, Northern Division, pursuant to 28 USC 1391(b)(1), this being the District and Division in which the Defendant AMA ESD resides, and under 1391(b)(2) because all events giving rise to Plaintiffs' claims occurred within this District and Division.

## THE PARTIES

3.       Plaintiff Atlanta Community Schools (ACS) is a Michigan general powers school district within the meaning of the Michigan Revised School Code, MCL 380.1, et seq.

4.      The principal business offices of ACS are located within the geographical area encompassed by the Eastern District of Michigan, Northern Division.

5.      Plaintiffs Eric and Regina DeRouchie reside within the geographical boundaries of the ACS.  Their minor son, T.C., attends school in the ACS.  T.C. is a child with a disability within the meaning of the Individuals with Disabilities Education Act (IDEA) and the Michigan Mandatory Special Education Act (MMSEA), a qualified person with a disability within the meaning of the Americans with Disabilities Act (ADA), as amended, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and a person with a disability under the Michigan Persons with Disabilities Civil Rights Act.

6.      T.C. receives special education and related services pursuant to an Individualized Education Program (IEP)[3] dated March 13, 2012.

7.      Plaintiff Cynthia Portillo resides within the geographical boundaries of the ACS.  Her minor daughter, E.P., attends school in the ACS.  E.P. is a child with a disability within the meaning of the IDEA and the Michigan Mandatory Special Education Act, a qualified person with a disability within the meaning of the ADA and Section 504, and a person with a disability under the Michigan Persons with Disabilities Civil Rights Act.

8.      E.P. receives special education and related services pursuant to an IEP dated October 26, 2011.

9.      The parents and students identified in paragraphs 5-8 will be referred to as the Parent and Student Plaintiffs.

---

[3]The term "individualized education program" or "IEP" means a written statement for a child with a disability that is developed, reviewed and revised in accordance with the procedures included within the IDEA.  20 USC 1401(14).

10.     Defendant Alpena-Montmorency-Alcona Educational Service District (AMA ESD) is a Michigan intermediate school district within the meaning of the Michigan Revised School Code (MCL 380.601, et seq.).

11.     The principal business offices of AMA ESD are located within the geographical area encompassed by the Eastern District of Michigan, Northern Division.

12.     The ACS is one of five constituent districts of the AMA ESD, within the meaning of the Michigan Revised School Code.   The other four constituent districts are Alcona Community Schools, Alpena Public Schools, Hillman Community Schools and Bingham Arts Academy.

13.     Defendant State of Michigan, Department of Education is established as a principal department of the government of the State of Michigan pursuant to Article 8, §3 of the Michigan Constitution of 1963.

14.     The Department of Education is charged with administering the educational affairs of the State, in accordance with law.

## COMMON ALLEGATIONS – IN GENERAL

15.     The State of Michigan receives annual funding from the United States, pursuant to the IDEA, to provide special education and related services to eligible children with disabilities.  20 USC 1411.

16.     Under the approved State statutory scheme, the AMA ESD receives IDEA funds through the State of Michigan.[4]

17.     The IDEA funds received by the AMA ESD are required to be used to provide special education and related services to eligible children with disabilities who reside within the

---

[4]MCL 388.1651a.

geographical boundaries of the five constituent districts served by the AMA ESD, including the ACS.[5]

18.     The AMA ESD receives additional funds from the State of Michigan,[6] apart from the IDEA funds, to provide special education and related services to eligible children with disabilities who reside within the constituent districts served by the AMA ESD.

19.     In addition to the federal and state funds referenced in paragraphs 16 and 18, above, the taxpayers in the constituent districts of the AMA ESD have, in accordance with MCL 380.1724, approved a special education millage.

20.     AMA ESD levies ad valorem property taxes based on the authorized millage.

21.     Section 1729 of the Michigan Mandatory Special Education Act (MMSEA), MCL 380.1729, requires that AMA ESD expend the monies collected under the millage for special education purposes according to the applicable administrative rules, including Rule 102 of the Michigan Administrative Rules for Special Education (R 340.1802).

22.     Pursuant to the IDEA and its implementing regulations, the AMA ESD is required to provide special education and related services to eligible children with disabilities who reside in the constituent local districts.

23.     The AMA ESD is also required to provide special education and related services to eligible children with disabilities who reside within the geographical boundaries of the constituent local districts pursuant to the applicable provisions of the Michigan Mandatory Special Education Act (MMSEA), MCL 380.1701, et seq., and the Michigan Administrative Rules for Special Education, R 340.1701, et seq.

---

[5]Michigan Administrative Rules for Special Education, Rule 102 (R 340.1802).
[6]MCL 388.1651a.

24.     Section 1711(1)(a) of the MMSEA, MCL 380.1711(1)(a), and Rule 133 of the Michigan Administrative Rules for Special Education, R 340.1833, require the AMA ESD to cooperate with the constituent local districts, including the ACS, to develop an intermediate school district plan (ISD Plan) for the provision of special education and related services to eligible disabled students who reside within the constituent local districts.

25.     The ISD Plan and any modifications thereto are required to be signed by the AMA ESD and each of the constituent local school districts.

26.     The ISD Plan creates mutual obligations between the AMA ESD and the constituent local districts.

27.     Any modifications to the ISD Plan are required to be accomplished through cooperation between AMA ESD and the constituent local school districts.

28.     Modifications to the ISD Plan require the signature of the AMA ESD and each of the constituent local school districts.

29.     The ISD Plan may not be unilaterally modified by the AMA ESD.

30.     An ISD Plan between the AMA ESD and the constituent local districts was adopted in 2002 and is the controlling document for purposes of the instant litigation.

31.     The ISD Plan requires AMA ESD to provide certain special education and related services to eligible students with disabilities who reside within the geographical boundaries of the constituent local districts, including the ACS.

32.     The ISD Plan requires AMA ESD to provide certain special education and related services to the Student Plaintiffs herein.

33.     The AMA ESD has violated the ISD Plan by terminating the special education and related services it is legally required to provide eligible students with disabilities who reside within the geographical boundaries of the ACS, including the Student Plaintiffs.

34.     The AMA ESD has violated the constitutions and laws of the United States and the State of Michigan by terminating the special education and related services it is legally required to provide to ACS's eligible students with disabilities, including the Student Plaintiffs.

35.     The AMA ESD has retained the federal, state and local funds that it has received to provide special education and related services to eligible ACS students, including the Student Plaintiffs, notwithstanding its termination of those services.

36.     The AMA ESD has falsely positioned its violations of the ISD Plan and the constitutions and laws of the United States and the State of Michigan as being a legally required response to the ACS's refusal to enter into a contract unilaterally developed by AMA ESD that modifies the ISD Plan.

### COMMON ALLEGATIONS - THE AMA ESD'S MOTIVATION FOR THE TERMINATION OF SERVICES

37.     The AMA ESD has terminated special education and related services to eligible ACS students with disabilities, at least in part in retaliation for ACS' complaints about AMA ESD and the manner in which it has been delivering special education programs and services.  This is evidenced, in part, by the following:

> A.     On September 8, 2010, Teresa Stauffer, ACS' former Superintendent of Schools, appeared at a public meeting of the Board of Education of the AMA ESD to express her dissatisfaction with the AMA ESD.  Among other things, Ms. Stauffer informed the AMA ESD Board that there were occasions when AMA ESD personnel had:

- been untruthful in dealings with ACS personnel;

- taken actions that were not consistent with the AMA ESD's mission statement;

- not communicated with the public in an honest and ethical way;

- been unwilling to cooperate with ACS staff;

- failed to provide special education and related and supplemental services in a cost effective manner;

- failed to maintain a safe and healthy learning environment; and,

- not taken into account the needs of ACS students.

B.     Ms. Stauffer and the ACS have complained to the AMA ESD and the Michigan Department of Education that ACS has been held responsible for, or otherwise borne the burden of, AMA ESD's failure to provide special education and related services in the manner required by federal and Michigan law.

C.     Ms. Stauffer has complained to the AMA ESD Board of Education that AMA ESD has not made wise use of monies entrusted to AMA ESD to provide special education and related services to ACS's eligible students with disabilities.

D.     Ms. Stauffer has complained to the AMA ESD that its personnel have not completed the initial IEPs of ACS students in a timely manner, as required by federal and Michigan law.

E.  Ms. Stauffer has complained to the AMA ESD that its personnel have not delivered special education and related services to ACS students in the manner required by their IEPs, as required by federal and Michigan law.

F.  In order to obtain special education and related services for ACS students, including Plaintiff T.C., Ms. Stauffer has had to insist that AMA ESD personnel do what their jobs otherwise required.  More particularly, Ms. Stauffer told several AMA ESD staff members, "Don't you dare come into my building and tell me you're not going to test one of our students when you have never met him, you have never seen him and couldn't pick him out of a line-up."

G.  Ms. Stauffer and the ACS have requested that AMA ESD commit, in writing, to providing ACS students with special education and related services in the manner required by federal and Michigan law.

H.  Ms. Stauffer and the ACS have refused to enter into a contract with the AMA ESD that was created by AMA ESD unilaterally and amends the current ISD Plan.

I.  On August 1, 2011, a number of members of the AMA ESD Board and AMA ESD Superintendent, Mr. Brian Wilmot, attended a public meeting of the ACS Board.  The meeting had been convened for the announced purpose of considering the AMA ESD's demand that the ACS enter into a contract unilaterally developed by AMA ESD that modified the ISD Plan. Undersigned counsel for ACS, who was present at the meeting, articulated ACS's concerns and invited a discussion that might lead to a resolution.

AMA ESD Board member, Mr. Ralph Stepaniak (the spokesperson for the AMA ESD contingent), refused to accept the invitation for a discussion. Instead, Mr. Stepaniak delivered and read a prepared letter signed by all members of the AMA ESD Board.  The letter notified ACS that the AMA ESD intended to terminate the provision of special education and related and supplemental services to eligible disabled ACS students.  The letter was significant, among other things, for its references to Ms. Stauffer's comments to the AMA ESD Board on September 8, 2010.  The letter states, in most pertinent part, as follows:

> Dear Members of the Atlanta Community Schools Board of Education,
>
> AMA ESD and Atlanta Community Schools (ACS) have enjoyed a long and very positive and collaborative relationship.  Unfortunately, over the course of the last two years that relationship has become one that is characterized by mistrust and dissatisfaction. . . .
>
> . . . [B]y failing to sign an agreement with AMA authorizing AMA to operate special education programs and services, ACS has chosen not to participate in AMA special education programs and services.
>
> The AMA ESD Board understands that it is within your legal rights to choose to provide these mandated special education services yourself.  One is left to wonder though why ACS would remain a part of AMA ESD given the fact that you choose not to avail yourselves of most of our services.
>
> In her prepared statement to the AMA ESD Board presented at our September 8, 2010 board meeting, Superintendent Stauffer began by expressing her desire "to separate from this intermediate school district."  She concluded her presentation by asking the AMA Board to "Release us from this ISD to

> join another intermediate school district."  Given your superintendent's request and your clear dissatisfaction with AMA ESD it is our position that AMA will not oppose ACS entering into a relationship with another ISD. . . .

J.   The AMA ESD contingent left the August 1, 2011 meeting immediately after Mr. Stepaniak finished reading the letter.  AMA ESD Board member Richard Matteson "high-fived" another AMA ESD Board member in the parking lot.  Later that evening, the AMA ESD Board released the letter to the press.

K.   The AMA ESD's Superintendent wrote a letter to the parents of every eligible ACS student with a disability, dated September 6, 2011, informing them that it was ACS' fault that the AMA ESD had terminated special education and related services to eligible ACS students.

L.   The AMA ESD caused the substance of the September 6, 2011 letter to be published as a public notice in the September 7, 2011 edition of the local newspaper, The Montmorency County Tribune.

38.   The AMA ESD has coerced, intimidated and threatened ACS for this advocacy. Furthermore,  AMA ESD has retaliated against the Parent and Student Plaintiffs based on the advocacy of the ACS in protecting their legal rights and opposing acts and omissions prohibited by the statutes that protect those rights.

## COUNT I

### Violations of the Individuals with Disabilities Education Act (IDEA) - Defendant AMA ESD

39.   Plaintiffs incorporate, by this reference, the allegations in paragraphs 1 through 38 of this First Amended Complaint.

40.     The State of Michigan receives annual funding from the United States, pursuant to the IDEA, to provide special education and related services to eligible children with disabilities.  20 USC 1411.

41.     As a necessary concomitant of such funding, the IDEA requires the provision of special education and related services to children with disabilities within the State of Michigan, including eligible ACS students.

42.     Under the approved statutory scheme, the AMA ESD receives IDEA funds through the State of Michigan.[7]

43.     Under the approved statutory scheme, ACS is to provide special education programs and services for its resident students.

44.     The approved statutory scheme permits ACS to enter into agreements with other public and private entities, including the AMA ESD, to provide special education and related services to eligible ACS students.

45.     The ISD Plan is an agreement between ACS and the AMA ESD, pursuant to which the AMA ESD, among other things, is obligated to provide certain special education programs and related services to eligible ACS students who are children with disabilities.

46.     Pursuant to the ISD Plan, the AMA ESD is obligated to provide certain related services to eligible ACS students pursuant to their IEPs.

47.     Pursuant to the ISD Plan, AMA ESD is also obligated to provide diagnostic services, including evaluations, for ACS students with certain suspected disabilities.

48.     AMA ESD has violated the IDEA by discontinuing the provision of diagnostic services, including evaluations, for ACS students with certain suspected disabilities.

---

[7]MCL 388.1651a.

49. The IEP of Plaintiff T.C. requires AMA ESD to provide him with the following related services: speech and language services, social work consultative services, and autism spectrum disorder consultative services.

50. The IEP of Plaintiff E.P. requires the AMA ESD to provide her with the related services of occupational therapy and physical therapy.

51. The AMA ESD has terminated the provision of all related services to all ACS students and, accordingly, is not providing the related services required by the IEPs of Plaintiffs T.C. and E.P.

52. The AMA ESD has violated the IDEA by terminating the provision of the referenced services.

53. The AMA ESD's violation of IDEA has caused injury to the Parent and Student Plaintiffs, as well as other similarly situated ACS students.

54. The AMA ESD's unlawful actions were and continue to be intentional, willful, malicious and/or done with reckless disregard for the rights of Parent and Student Plaintiffs, as well as other similarly situated ACS students to receive related services.

55. Section 615(j) of the IDEA, 20 USC 1415(j), requires that the AMA ESD continue providing related services to Plaintiffs T.C. and E.P., and to all other similarly situated ACS students during the pendency of this civil action.

## COUNT II

### Violation of Title II of the
### Americans with Disabilities Act of 1990, as amended -
### Defendant AMA ESD

56. Plaintiffs incorporate, by this reference, the allegations in paragraphs 1 through 55 of this First Amended Complaint.

57.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity (which includes a public school district), or be subjected to discrimination by any such entity."  42 USC 12132.

58.     Title II of the ADA further provides that a public entity "may not utilize criteria or methods of administration [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability."

59.     Title II of the ADA further provides that a public entity "may not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability from fully and equally enjoying any service, program or activity, unless such criteria can be shown to be necessary."

60.     The AMA ESD has violated Title II of the ADA by excluding Student Plaintiffs from participation in services and programs, utilizing criteria or methods of administration that have the effect of subjecting Student Plaintiffs to discrimination, and imposing or applying as a condition to receiving the related services to which Plaintiffs are statutorily entitled, the requirement that ACS first enter into a contract unilaterally developed by AMA ESD which modifies the ISD Plan.

61.     AMA ESD's unlawful actions were and continue to be intentional, willful, malicious and/or done with reckless disregard to the rights of Student Plaintiffs to be free from discrimination based on disability.

## COUNT III

### Violation of Section 504 of the Rehabilitation Act of 1973 - Defendant AMA ESD

62.     Plaintiffs incorporate, by this reference, the allegations in paragraphs 1 through 61 of this First Amended Complaint.

63.     Section 504 of the Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 USC 794(a).

64.     As set forth above, AMA ESD has, in violation of Section 504 and its regulations, excluded Student Plaintiffs from receiving the related services to which they are statutorily entitled unless ACS first enters into a contract unilaterally developed by AMA ESD which modifies the ISD Plan.

65.     AMA ESD's unlawful actions were and continue to be intentional, willful, malicious and/or done with reckless disregard to the rights of Student Plaintiffs to be free from discrimination based on disability.

## COUNT IV

### Violation of the Right to Equal Protection Under the 14th Amendment to the United States Constitution - Defendant AMA ESD

66.     Plaintiffs incorporate, by this reference, the allegations in paragraphs 1 through 65 of this First Amended Complaint.

67.     The Equal Protection Clause of the United States Constitution prohibits state and local governments from denying the equal protection of the laws to any person.

68.     The Equal Protection Clause of the United States Constitution is enforceable through 42 USC 1983.

69.     The AMA ESD is a person within the meaning of Section 1983. The Parent and Student Plaintiffs are citizens within the meaning of Section 1983.

70.     The Equal Protection Clause of the United States Constitution prohibits AMA ESD from discriminating against the Parent and Student Plaintiffs unless the discrimination is substantially related to the achievement of an important governmental objective.

71.     The Equal Protection Clause of the United States Constitution prohibits AMA ESD from discriminating against the Parent and Student Plaintiffs unless the discrimination is rationally related to a legitimate governmental purpose.

72.     The AMA ESD has discriminated against the Parent and Student Plaintiffs, and other similarly situated ACS parents and students, by denying them special education and related services provided to similarly situated parents and students in other local constituent districts of the AMA ESD.

73.     This act of discrimination was pursuant to action of the AMA ESD Board and AMA ESD policy conditioning the right of Student Plaintiffs and other similarly situated persons to receive special education and related services on ACS entering into a contract unilaterally developed by AMA ESD which modifies the ISD Plan.

74.     This discrimination is not substantially related to an important governmental objective.

75.     This discrimination is not rationally related to a legitimate governmental purpose.

76.     As a result of the AMA ESD's illegal deprivation of Parent and Student Plaintiffs' rights to equal protection, Parent and Student Plaintiffs have suffered, and will continue to suffer, immediate irreparable injury.

## COUNT V

**Violation of the Right to Due Process of Law Under the
14th Amendment to the United States Constitution -
Defendant AMA ESD**

77.     Plaintiffs incorporate, by this reference, the allegations in paragraphs 1 through 76 of this First Amended Complaint.

78.     The Due Process Clause of the 14th Amendment to the United States Constitution prohibits state and local governments from denying the property interests of a person without due process of law.

79.     The Due Process Clause of the 14th Amendment to the United States Constitution is enforceable through 42 USC 1983.

80.     The AMA ESD is a person within the meaning of Section 1983.  The Parent and Student Plaintiffs are citizens within the meaning of Section 1983.

81.     The AMA ESD has deprived the Parent and Student Plaintiffs of their rights and privileges under the Due Process Clause of the 14th Amendment to the United States Constitution, as set forth in this Count V.

82.     ACS has a constitutionally protected property interest in the special education and related services the AMA ESD is required to provide under federal and Michigan law, including the ISD Plan.

83.     The Parent and Student Plaintiffs, and others similarly situated, have a constitutionally protected property interest in the special education and related services the AMA

ESD is required to provide under federal and Michigan law, including the ISD Plan and the Student's IEPs.

84.     The AMA ESD has deprived Plaintiffs of their constitutionally protected property interests without due process law.

85.     This deprivation was pursuant to the action of the AMA ESD Board and pursuant to AMA ESD policy conditioning the right of Student Plaintiffs and other similarly situated persons to receive special education and related services on ACS entering into a contract unilaterally developed by AMA ESD which modifies the ISD Plan.

86.     As a result of the AMA ESD's illegal deprivation of their constitutionally protected property interests, Plaintiffs have suffered, and will continue to suffer, immediate irreparable injury.

## COUNT VI

### Violation of Michigan Mandatory Special Education Act, MCL 380.1701, et seq., and the ISD Plan - Defendant AMA ESD

87.     Plaintiffs incorporate, by this reference, the allegations in paragraphs 1 through 86 of this First Amended Complaint.

88.     Section 1711(1)(a) of the Michigan Mandatory Special Education Act, MCL 380.1711(1)(a), and Rule 133 of the Michigan Administrative Rules for Special Education, R 340.1833, require the AMA ESD to develop and implement an ISD Plan describing, among other things, the manner in which the AMA ESD will use the federal, state and local tax dollars it receives to provide special education and related services to constituent local school district students, including eligible ACS Students.

89.     The ISD Plan requires the AMA ESD to provide related services to eligible ACS students, including Plaintiffs T.C. and E.P.

90.     Section 1711(1)(a) and Rule 133 prohibit the AMA ESD from unilaterally modifying the ISD Plan.

91.     Section 1711(1)(a) and Rule 133 require the AMA ESD to cooperate with constituent districts, including ACS, and obtain the signatures of each of the constituent school districts when modifying or amending the ISD Plan.

92.     The AMA ESD notified ACS, in August, 2011, that it was considering modifying the ISD Plan.

93.     The AMA ESD refused to cooperate with ACS in the development and promulgation of a revised ISD Plan.

94.     The AMA ESD has violated Section 1711(1)(a) and R 133 by terminating the services it provides to eligible ACS students, including the Student Plaintiffs, pursuant to the ISD Plan.

95.     The AMA ESD has violated Section 1711(1)(a) and R 133 by refusing to cooperate with ACS in the development and promulgation of a revised ISD Plan.

96.     The AMA ESD has violated Section 1729 of the Revised School Code, MCL 380.1729, by retaining the money raised by the local special education millage described in paragraphs 19 and 20 and not spending it as required by the ISD Plan to provide related services to Student Plaintiffs T.C., E.P. and K.P.

97.     The AMA ESD's violations of Sections 1711(1)(a) and 1729 and R 133 have caused injury to ACS, the Parent and Student Plaintiffs and others similarly situated.

98.     The AMA ESD's unlawful actions were and continue to be intentional, willful, malicious and/or done with reckless disregard to the rights of the Parent and Student Plaintiffs and others similarly situated.

## COUNT VII

### Violation of Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101 - Defendant AMA ESD

99.     Plaintiffs incorporate, by this reference, the allegations in paragraphs 1 through 98 of this First Amended Complaint.

100.    At all times relevant to this matter, each Student Plaintiff was a "person with a disability," within the meaning of Section 103 of the Persons with Disabilities Civil Rights Act (MCL 37.1103).

101.    At all times relevant to this matter, AMA ESD was a "person" within the meaning of Section 103 of the Act.

102.    AMA ESD has engaged in wrongful and discriminatory treatment of Student Plaintiffs by conditioning the right of Student Plaintiffs and other similarly situated persons to receive special education and related services on ACS entering into a contract unilaterally developed by AMA ESD, which modifies the ISD Plan.

103.    AMA ESD's actions were intentional, done with reckless indifference, and in disregard of Parent and Student Plaintiffs' rights.

## COUNT VIII

### Violation of the Right to Equal Protection under
### Article I, § 2, of the Michigan Constitution of 1963 -
### Defendant AMA ESD

104.    Plaintiffs incorporate, by this reference, the allegations in paragraphs 1 through 103 of this First Amended Complaint.

105.    The Equal Protection Clause of the Constitution of the State of Michigan prohibits the state and local governments from denying the equal protection of the laws to any person.

106.    The Equal Protection Clause of the Constitution of the State of Michigan prohibits AMA ESD from discriminating against the Parent and Student Plaintiffs unless the discrimination is substantially related to the achievement of an important governmental objective.

107.    The Equal Protection Clause of the Constitution of the State of Michigan prohibits AMA ESD from discriminating against the Parent and Student Plaintiffs unless the discrimination is rationally related to a legitimate governmental purpose.

108.    The AMA ESD has discriminated against the Parent and Student Plaintiffs, and other similarly situated ACS parents and students, by denying them special education and related and supplemental services provided to similarly situated parents and students in other Constituent Districts.

109.    This discrimination was pursuant to action of the AMA ESD Board and AMA ESD policy.

110.    This discrimination is not substantially related to an important governmental objective.

111.    This discrimination is not rationally related to a legitimate governmental objective.

23

112.     As a result of the AMA ESD's illegal deprivation of Parent and Student Plaintiffs' rights to equal protection, Parent and Student Plaintiffs have suffered, and will continue to suffer, immediate irreparable injury.

## COUNT IX

**Violation of the Right to Due Process of Law under
Article I, § 17, of the Michigan Constitution of 1963 -
Defendant AMA ESD**

113.     Plaintiffs incorporate, by this reference, the allegations in paragraphs 1 through 112 of this First Amended Complaint.

114.     The Due Process Clause of the Constitution of the State of Michigan prohibits state and local governments from denying property interests without due process of law.

115.     ACS has a constitutionally protected property interest in the special education and related services the AMA ESD is required to provide under federal and Michigan law, including the ISD Plan.

116.     The Parent and Student Plaintiffs, and others similarly situated, have a constitutionally protected property interest in the special education and related services the AMA ESD is required to provide under federal and Michigan law, including the ISD Plan and the Student's IEPs.

117.     The AMA ESD has deprived Plaintiffs of their constitutionally protected property interests without due process of law.

118.     As a result of the AMA ESD's illegal deprivation of their constitutionally protected property rights, Plaintiffs have suffered, and will continue to suffer, immediate irreparable injury.

## COUNT X

### Appeal of Final Report from Michigan Department of Education - Defendants AMA ESD and State of Michigan, Department of Education

119.    Plaintiffs incorporate, by this reference, the allegations in paragraphs 1 through 118 of this First Amended Complaint.

120.    On October 3, 2011, Plaintiffs commenced the instant action by filing a Verified Complaint.

121.    The Complaint, in part, placed at issue the validity of a document entitled Authorization to Operate Special Education Programs and/or Services ("Authorization").

122.    Defendant AMA ESD had demanded that the Authorization be signed before it would agree to provide educational services to students with disabilities enrolled in the Atlanta Community Schools, as otherwise required by the ISD Plan.

123.    Susan Grulke is the Special Education Director for AMA ESD.

124.    In direct response/retaliation to Plaintiffs' October 3, 2011 filing of the Verified Complaint, Ms. Grulke filed a complaint with the State of Michigan, Department of Education on October 7, 2011.

125.    The complaint charged that Atlanta "did not renew the annual contract with [AMA-ESD] that is required for the delivery of special education programs and services."

126.    Following an investigation, Mr. Ron Greiner, Case Manager for the Michigan Department of Education, issued a Final Report (Exhibit K).

127.    The Report concluded with the statement:

> In not signing the annual contract [the "Authorization"] the district is noncompliant with MCL 380.1751(1)(2)(3).

25

128.     The cited statutory provisions do not control the complained of action/inaction on the part of Atlanta Community Schools in refusing to execute the Authorization.

129.     MCL 380.1751(1) provides that the board of a local school district shall provide special education programs and services for its resident students with disabilities by either operating the special education program or service or contracting for the provision of the same.

130.     MCL 380.1751(2) sets forth the matters to be included in any such contract.

131.     MCL 380.1751(3) requires that any contracted for programs or services be in accordance with the intermediate school district's plan.

132.     None of the cited statutory provisions address or contemplate Atlanta's allegation that through the so-called "Authorization," AMA-ESD had unilaterally modified (or attempted to modify) the AMA-ESD Plan.

133.     The Final Report does not address Plaintiffs' contention but simply holds that Atlanta was required to sign the "annual contract."

134.     Atlanta was not required to sign an "annual contract" (or "Authorization") that unilaterally modified the AMA-ESD Plan, which Plan had previously been approved by the State of Michigan, Department of Education.

## DECLARATORY RELIEF ALLEGATIONS

135.     Plaintiffs incorporate, by this reference, the allegations in paragraphs 1 through 134 of this First Amended Complaint.

136.     A present and actual controversy exists between Plaintiffs and the AMA ESD concerning their rights and respective duties.  Plaintiffs contend that the AMA ESD has violated and continues to violate their rights, and the rights of other persons similarly situated, under the IDEA, the ADA, Section 504, the Michigan Mandatory Special Education Act, the Michigan

Persons with Disabilities Civil Rights Act, and the Constitutions of the United States and the State of Michigan. Plaintiffs are informed and believe that the AMA ESD denies these allegations. Declaratory relief is therefore necessary and appropriate.

137. Plaintiffs seek a judicial declaration of the rights and duties of the respective parties.

## INJUNCTIVE RELIEF ALLEGATIONS

138. Plaintiffs incorporate, by this reference, the allegations in paragraphs 1 through 137 of this First Amended Complaint.

139. No plain, adequate, or complete remedy at law is available to Plaintiffs to redress the wrongs alleged herein.

140. If the Court does not grant the injunctive relief sought herein, Plaintiffs will be irreparably harmed.

## RELIEF REQUESTED

Plaintiffs request the following relief:

1.  Permanent Injunction:

    A. Plaintiffs have and will continue to suffer irreparable injury unless a permanent injunction is issued.

    B. Therefore, Plaintiffs respectfully request that this Honorable Court enter a Permanent Injunction:

        1. Requiring the AMA ESD to continue providing eligible ACS students with special education and related services pursuant to the ISD Plan, including services to the Parent and Student Plaintiffs.

2.      Requiring the AMA ESD, on an on-going basis, to reimburse ACS for any funds it has expended to provide its eligible students with disabilities with the special education and related services the AMA ESD is required to provide pursuant to the ISD Plan, including services to the Parent and Student Plaintiffs.

3.      Requiring the AMA ESD to cooperate with the constituent local districts, including ACS, in the development and implementation of a modified ISD Plan.

4.      Enjoining Defendant Michigan Department of Education from attempting to enforce implementation of the corrective action included within the Final Report.

2.      <u>Compensatory Damages</u>:  Plaintiffs respectfully request that this Honorable Court award Plaintiff ACS damages to compensate ACS for the services it has provided to eligible ACS students with disabilities, including the Parent and Student Plaintiffs, in place of the services AMA ESD was required to provide pursuant to the IDEA, the Michigan Mandatory Special Education Act and the ISD Plan.

3.      <u>Punitive Damages</u>:   Plaintiffs respectfully request that this Honorable Court impose punitive damages against AMA ESD sufficient to deter further acts of reckless and callous indifference to their constitutional and statutory rights, as well as the retaliatory actions taken by AMA ESD against ACS for the exercise of legally protected rights, including bringing the instant lawsuit.

4.      <u>Attorney Fees and Costs</u>:  Plaintiffs respectfully request that this Honorable Court order AMA ESD to reimburse their reasonable attorney fees and costs.

Respectfully submitted:

/s/ Robert A. Lusk
**LUSK & ALBERTSON PLC**
Attorneys for Plaintiffs
40950 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan  48034
Phone:  (248) 988-5662
E-mail:  RLusk@LuskAlbertson.com
Dated:  October 1, 2012          Michigan Bar Number:  P38122

00176573

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2012, I electronically filed the foregoing *First Amended Complaint* with the Clerk of the Court using the ECF System which will send notification to counsel for Defendant Alpena-Montmorency-Alcona Educational Service District and all other registered ECF users for this matter

Respectfully submitted:

/s/ Robert A. Lusk
**LUSK & ALBERTSON, P.L.C.**
Attorney for Plaintiffs
40950 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan  48304
(248) 258-2850
Dated:  October 1, 2012          Michigan Bar Number:  P38122